BEN ELFMAN & SONS, INC. *vs.* HOME INDEMNITY
COMPANY.

Suffolk. May 8, 1991. - August 15, 1991.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Insurance*, Fire, Interest, Unfair act or practice. *Statute*, Construction.
*Consumer Protection Act*, Unfair act or practice, Insurance.

An insured was not entitled to recover interest under G. L. c. 175, § 99,
Twelfth, on its claims for business interruption and property loss that
were established by agreement with the insurer, where payment in each
instance was made within thirty days after the insured's statement in
proof of loss for the agreed figure was received by the insurer. [17-21]
An insured's claim under G. L. c. 93A against its insurer for treble dam-
ages, attorney's fees, costs, and interest (on unpaid interest) was prop-
erly dismissed where, since the defendant rightfully had refused to pay
the interest, its actions in that regard did not constitute unfair or decep-
tive acts, and where the insured did not claim any other unfair or de-
ceptive act. [21]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 3, 1989.

Motions for summary judgment were heard by *Elbert Tut-
tle*, J., and a final judgment was entered by *J. Owen Todd*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Anna Katherine Bennett* for the defendant.

*Marvin Milton* (*Jeffrey N. Roy* with him) for the plaintiff.

O'CONNOR, J. The defendant insurer issued a policy of in-
surance providing coverage to the plaintiff for loss and dam-
age to its building, furniture, fixtures, and inventory on ac-
count of fire and for related business interruption loss. The
plaintiff sustained covered losses and damage for which the
defendant paid. The principal issue in this case is whether, in

addition to the payments already made, the plaintiff is enti-
tled to interest.

The plaintiff's complaint was in two counts, the first of
which asserted the defendant's failure to pay interest .in
breach of the insurance contract, and the second of which
asserted a right to treble damages, attorney's fees, costs, and
interest (on the unpaid interest) under G. L. c. 93A, §§ 2
and 11 (1990 ed.). After the defendant filed its answer, the
plaintiff filed a motion for summary judgment asserting its
entitlement to judgment on the pleadings. The defendant re-
sponded with its own motion for summary judgment
grounded on the pleadings and two affidavits. A judge al-
lowed the plaintiff's motion as to count 1, the breach of con-
tract claim, and denied the defendant's motion as to that
count. The judge denied the plaintiff's motion, and allowed
the motion of the defendant, with respect to the G. L. c. 93A
claim asserted in count 2. Subsequently, the judge ordered
that judgment enter for the plaintiff in the sum of
$74,310.79. Of that amount, $58,502.64 represents a recov-
ery of interest on the plaintiff's property loss claim and
$15,808.15 was for interest on the business interruption
claim. Both parties appealed. We granted the defendant's ap-
plication for direct appellate review. We now reverse the
judgment for the plaintiff and order the entry of judgment
for the defendant.

The significant facts established for summary judgment
purposes by the pleadings and affidavits, all of which were
considered by the judge in connection with both motions, are
as follows. The fire occurred on June 16, 1987, and was
promptly reported to the defendant. About three weeks later,
on July 7, the plaintiff, through a public insurance adjustor,
submitted a sworn statement in proof of loss claiming entitle-
ment to "a partial payment" of $250,000. That sum was im-
mediately paid. Thereafter, the adjustor submitted a "per-
sonal property summary" regarding loss of inventory in the
sum of $4,077,162.56, and then filed further revised and cor-
rected summaries having to do with both inventory and fur-
niture and fixture losses. Ultimately, the plaintiff and defend-

ant agreed that the amount of property loss was $1,442,174 and, by correspondence dated March 16, 1988, the adjustor submitted a sworn statement in proof of loss on the plaintiff's behalf in the sum of $844,552, which represented the agreed loss after deducting earlier partial payments and $5,000, which was the policy deductible amount. Six days later, on March 22, the defendant issued the plaintiff a check for $844,552.

In October, 1988, sixteen months after the fire, the adjustor submitted a business interruption claim in the sum of $216,331, and on April 10, 1989, submitted a sworn statement in proof of loss for a "partial payment" of $70,000, which amount the defendant paid on April 26, 1989. The parties subsequently negotiated a figure of $215,000 on the business interruption claim, and in July, 1989, the plaintiff submitted a sworn statement in proof of loss in the amount of $145,000 representing the agreed figure minus the previous $70,000 payment. Within two weeks, the defendant paid the $145,000.

The policy in issue was written in conformity with G. L. c. 175, § 99 (1990 ed.). Section 99 provides with exceptions not relevant here that "[n]o company shall issue policies or contracts which . . . insure against loss or damage by fire . . . to property or interests in the commonwealth, other than those of the standard forms herein set forth." Chapter 175, § 99, Twelfth, sets forth the substantive language required in a standard policy insuring against loss or damage by fire. The required provisions relevant to the present dispute are as follows: "The insured shall give immediate written notice to this company of any loss, protect the property from further damage forthwith, separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the insured the following: the time and cause of the loss, the in-

terest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made. . . .

"*In case of any loss or damage, the company, within thirty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property* with other of the same kind and goodness, or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, *with interest thereon from the time when the loss shall become payable, as above provided. The company shall be liable for the pay-*

*ment of interest to the insured at a rate of one per cent over
the prime interest rate on the agreed figure commencing
thirty days after the date an executed proof of loss for such
figure is received by the company,* said interest to continue
so long as the claim remains unpaid. . . .

"In case of loss under this policy and a failure of the par-
.ties to agree as to the amount of loss, it is mutually agreed
that the amount of such loss shall be referred to three disin-
terested men, the company and the insured each choosing
one out of three persons to be named by the other, and the
third being selected by the two so chosen; and the award in
writing by a majority of the referees shall be conclusive and
final upon the parties as to the amount of loss or damage,
and such reference, unless waived by the parties, shall be a
condition precedent to any right of action in law or equity to
recover for such loss . . . ." (Emphasis added.)

In arriving at his determination that the plaintiff is enti-
tled to interest, the motion judge relied heavily on *Trempe v.
Aetna Casualty & Sur. Co.,* 20 Mass. App. Ct. 448 (1985).
In that case, in which the parties ultimately agreed on the
amount of the loss, the Appeals Court concluded that inter-
est begins to accrue thirty days after the insured has submit-
ted a statement in proof of loss regardless of whether, when
the statement was submitted, the parties had agreed as to the
amount of the loss. In a footnote to his memorandum of deci-
sion, the judge explained: "This Court is constrained to fol-
low the ruling set forth in *Trempe.* However, it is troubled by
the language in G. L. c. 175, § 99, which states the company
is liable for the payment of interest on the '*agreed figure*
commencing thirty days after the date an executed proof of
loss *for such figure is received* by the company . . .' " (em-
phasis in original). Based on *Trempe,* the judge ruled that
"statutory interest should be calculated on [the plaintiff's
loss and damage to property] claim beginning 30 days from
July 7, 1987, through March 22, 1988, the date upon which
the claim was paid." With respect to the claim for business
interruption loss, the judge ruled that, under G. L. c. 175,
§ 102, the defendant "waived its right to a proof of loss by

never requesting a proof from the insured after it received notice of the loss [October 17, 1988]," and that, therefore, interest ran from thirty days after October 17, 1988, until July 27, 1989, when the business interruption loss was paid.

We reject the result reached by the judge and by the Appeals Court in *Trempe, supra,* because the policy language, mandated by the statute, that the insurer "shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company," cannot be reconciled with such a result. The "agreed figure" does not, as the plaintiff argues, simply "serve[ ] as the amount upon which the interest will be calculated." The agreed figure does indeed serve as the amount on which the interest will be calculated, but also, as the statute explicitly provides, the recitation of "such figure" in an executed proof of loss triggers the commencement of the thirty-day period after which the insured will be liable for interest. The statute, as a whole, and therefore the insurance policy, cannot be construed otherwise without nullifying that provision. Construing a statute in a way that nullifies one of its provisions is inappropriate if there is a reasonable alternative. *Saccone* v. *State Ethics Comm'n,* 395 Mass. 326, 332 (1985). *Milton* v. *Metropolitan Dist. Comm'n,* 342 Mass. 222, 225 (1961). We believe there is a reasonable alternative here and we discuss it below.

In keeping with the mandate of § 99, the policy provides in pertinent part as follows: "In case of any loss or damage, the company, within thirty days after the insured shall have submitted a [signed, sworn statement in proof of loss], as provided in the preceding clause [requiring a detailed recitation of information essential to loss evaluation], shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness . . . . It is moreover understood that . . . the company shall not in any case be liable for more than the sum insured, with interest thereon from the time

when the loss shall become payable as above provided." That language is immediately followed by the language, which we have quoted earlier, that explicitly states that the insurer "shall be liable for the payment of interest . . . on the agreed figure commencing thirty days after the date an executed proof of loss *for such figure* is received by the company" (emphasis added).

The statutorily required policy provisions are far from clear. However, we must do our best to discern the legislative intent from the language used, keeping apparent legislative objectives in mind. In doing so, we recognize that, "[b]ecause the language of the standard policy is prescribed by statute and controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). We think that the several quoted statutory and policy provisions dealing with liability for interest may be read together with the least possible violence to their language in the following way: An insurer is not required to pay a loss before its amount has been established by agreement or arbitration. In a case involving a loss established by agreement, the insurer must pay that loss within thirty days after the insured has filed a sworn proof of loss for the agreed figure and, if the insurer fails to do so, it will be liable for interest commencing after expiration of the thirty-day period.[1] Interpreted in that way, not only is none of the statutory language nullified, but also there is no inconsistency between the provision dealing with when an insurer is required to pay a loss and the provisions dealing with the question when interest begins to run. Consistent with the apparent over-all statutory scheme, interest begins to run when the insurer fails to make timely payment of a loss.

We are not persuaded that our construction of the provisions of § 99 respecting payment due dates and interest will

---

[1]We need not decide when, after the amount of a loss has been established by arbitration, the loss must be paid or interest begins to run.

encourage insurers unfairly to delay agreement about the extent of claimed losses, and therefore delay payment, in order to have interest-free use of money fairly belonging to insureds, as the plaintiff suggests. Insurers are "often unable to obtain reliable independent information as to the extent of the loss." *Gechijian* v. *Richmond Ins. Co.*, 298 Mass. 487, 489 (1937). The Legislature's awareness of that fact is demonstrated by the provisions in § 99 requiring claimants to provide detailed statements in proof of loss and to cooperate with an insurer's reasonable investigative efforts. Therefore, fairness requires, and the statute appears to contemplate, that insurers have a reasonable period of time in which to evaluate claimed fire losses and either agree on a figure and pay it or submit the matter to arbitration. Any unfair practice on the part of insurers in this regard may be dealt with under G. L. c. 93A. We conclude, therefore, that there is no liability for interest in this case because payment in every instance was made within thirty days after the plaintiff's submission of a statement in proof of loss for an agreed figure.

Nothing in G. L. c. 175, § 102 (1990 ed.), helps the plaintiff. Section 102 provides in material part that "[t]he failure of the insured under a fire policy in the standard form prescribed by section ninety-nine to render the sworn statement specified therein forthwith upon the occurrence of loss or damage by fire shall not preclude recovery therefor, if the insured, forthwith upon the occurrence thereof, gives written notice of the fire, and the location thereof, to the company and if the insured" takes other action requested by the insurer. In such circumstances, "the periods of time within which the company shall, as provided in such policy, pay the amount for which it is liable, or replace the property . . . shall be computed from the time when the company receives such written notice." Section 102 provides that, in specified circumstances, an insurer cannot take advantage of an insured's failure to submit a sworn statement in proof of loss. *Molea* v. *Aetna Ins. Co.*, 326 Mass. 542, 544 (1950). The motion judge applied c. 175, § 102, to the plaintiff's claim of business interruption loss and concluded that the plaintiff

was entitled to interest on the agreed amount of that loss running from thirty days after October 17, 1988, the date the insurer received notice of the loss, until the loss was paid. We disagree with the judge's conclusion because, even if the plaintiff had submitted a sworn proof of loss on October 17, 1988, the plaintiff would not have been entitled to payment or the commencement of interest thirty days later. There was no agreement as to the extent of that loss until July, 1989. The plaintiff is not entitled to interest on its business interruption loss because the loss was paid within thirty days after an executed proof of loss for an agreed figure was received by the insurer.

Finally, we mention briefly the plaintiff's contention that the motion judge erred in dismissing its claim under G. L. c. 93A. Because we have decided that the defendant rightfully refused to pay interest under the policy, its actions in that regard do not constitute unfair and deceptive acts. See *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 717 (1989). The plaintiff has not claimed any other unfair or deceptive act. Therefore, the judge did not err in dismissing the c. 93A claim.

We reverse the judgment for the plaintiff and order the entry of judgment for the defendant.

*So ordered.*