James X. **MULLEN and Mullen Advertising, Inc., Plaintiffs, Appellees,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant, Appellant.**

**No. 91–2151.**

United States Court of Appeals, First Circuit.

Heard May 7, 1992.

Decided Aug. 17, 1992.

10. Plaintiff informs us he has since filed suit in state court "to preserve his rights" during the pendency of this appeal.

Joseph D. Burke with whom Nelda D. Cronin, Matthew Mahoney, and Burke, Wieners, Moran, Hurley & Merrick, Boston, Mass., were on brief for defendant, appellant.

Lawrence M. Gordon with whom Robert D. Gordon, Boston, Mass., was on brief for plaintiffs, appellees.

Before CYR, Circuit Judge, CAMPBELL, Senior Circuit Judge, and FUSTE,* District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal arises from an action brought by plaintiffs-appellees, James X.

* Of the District of Puerto Rico, sitting by designation.

Mullen and Mullen Advertising, Inc. ("Mullen") against defendant-appellant, St. Paul Fire and Marine Insurance Co. ("St. Paul") seeking to collect interest on an insurance claim paid by St. Paul to cover damages incurred during a fire on Mullen's premises. The United States District Court for the District of Massachusetts granted Mullen's motion for summary judgment after St. Paul had failed to oppose the motion. The court denied St. Paul's subsequent motions to excuse its default and vacate judgment. St. Paul appeals on the merits from the district court's grant of summary judgment. We reverse.

## I. BACKGROUND

Mullen, an advertising firm located in Wenham, Massachusetts, is St. Paul's insured under a standard form fire insurance policy conforming to M.G.L. ch. 175, § 99. On November 2, 1987, a fire occurred on Mullen's premises destroying real and personal property and causing Mullen to lose rental income. Pursuant to the terms of its policy with St. Paul, Mullen submitted a "Partial Interim Sworn Statement in Proof of Loss" on December 3, 1987 in the amount of $1,500,000. This document did not state the actual cash value of the property or the whole loss and damage to the property as a result of the fire. As a consequence, St. Paul rejected the proof of loss in a letter dated January 4, 1988. Nevertheless, St. Paul agreed to reimburse Mullen—without acknowledging liability for the loss—for those expenditures directly incurred to date. To this end, St. Paul issued five checks totaling $1,017,571.56 to

Mullen between February 11, 1988 and August 22, 1988. On December 6, 1988, Mullen and St. Paul reached a final agreement that the exact amount of the insured loss totaled $6,592,506. On December 22, 1988, Mullen filed a "Sworn Statement in Proof of Loss" for $3,509,051.44 representing the total agreed claim of loss "net of depreciation, co-insurance penalty, deductible and $1,017,571.56 previously paid." Mullen indicated on the "Sworn Statement in Proof of Loss" that this amount did not include interest.[1] On the same day, December 22, 1988, St. Paul issued a check to Mullen for $3,509,051.44.

On February 1, 1989, pursuant to M.G.L. ch. 175 §§ 99–102B,[2] Mullen sent St. Paul a formal demand letter seeking interest on the $3,509,051.44 that St. Paul paid for the period beginning 30 days after Mullen's December 3, 1987 "Partial Interim Sworn Statement in Proof of Loss" and ending on December 22, 1988—the date St. Paul made payment. Because St. Paul continued to maintain that it owed no interest to Mullen on the claim amount, Mullen brought this action against St. Paul in the district court on May 22, 1989. Mullen claimed breach of contract and violations of M.G.L. ch. 93A[3] and sought interest pursuant to M.G.L. ch. 175 § 99. On November 16, 1990, Mullen filed a motion for summary judgment on its claims. When St. Paul failed to oppose this motion, the district court on December 20, 1990 issued an order allowing Mullen's motion and entering summary judgment for Mullen.[4]

Apparently unaware that summary judgment had already been entered in Mullen's favor, St. Paul, on January 3, 1991, filed a

---

1. In response to Mullen's request for a statement of St. Paul's position on the payment of interest on the amount of the Loss, St. Paul, by letter dated December 16, 1988, informed Mullen that it believed that it would not owe any interest on the amounts claimed unless it failed to pay the claim 30 days after Mullen submitted a *completed* "Statement of Proof of Loss." As St. Paul considered Mullen's December 3, 1987 statement to be incomplete, it contended that the thirty day period had not begun to run.

2. M.G.L. Chapter 175 Section 99 states:

 The company shall be liable for the payment of interest to the insured at a rate of one per

cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company said interest to continue so long as the claim remains unpaid.

3. M.G.L. Chapter 93A Section 2(a) (the "Massachusetts Consumer Protection Act") states in pertinent part "... unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

4. Under Local Rule 7.1(A)(2) St. Paul was required to file its opposition within fourteen days of the filing of summary judgment. It did not do so.

motion to extend the time within which to file its opposition. On February 12, 1991, St. Paul filed a cross-motion for summary judgment opposing Mullen's motion and requesting a hearing. On the same day, St. Paul also filed a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1).[5] On May 20, 1991, the district court denied the latter motion on the ground that St. Paul failed to demonstrate a good reason for its default. On May 30, 1991, St. Paul filed a motion for reconsideration or in the alternative to vacate the court's May 20, 1991 order denying its motion for relief from judgment and asked that it be allowed to file an opposition to Mullen's motion for summary judgment for reasons of fundamental fairness. On July 8, 1991, the district court issued an order again denying St. Paul's motion.

On August 20, 1991, St. Paul filed a motion for reconsideration and to vacate the court's original December 20, 1990 order entering summary judgment in favor of Mullen. In its motion, St. Paul argued that since the grant of summary judgment, but prior to entry of final judgment, the Massachusetts Supreme Judicial Court decided *Ben Elfman & Sons v. Home Indemnity Co.*, 411 Mass. 13, 576 N.E.2d 670 (1991), which overturned *Trempe v. Aetna Casualty & Surety Co.*, 20 Mass.App. 448, 480 N.E.2d 670 (1985)—the case upon which Mullen's claim was based. Mullen opposed St. Paul's motion solely on the basis that St. Paul had no standing to oppose its summary judgment motion after it had originally failed to file an opposition within the time required by Local Rule 7.1(A)(2), and after the court had denied St. Paul's request for relief from its default. On September 10, 1991, the district court denied St. Paul's motion for reconsideration or in the alternative to vacate its December 20, 1990 order.

On September 23, 1991, Mullen moved for approval of a form of judgment. The district court granted Mullen's motion on October 8, 1991—despite St. Paul's opposi-

tion—and entered final judgment for Mullen in the amount of $1,173,071.74, representing interest owed, double damages, attorney's fees and costs. St. Paul filed this appeal on October 18, 1991.

## II. DISCUSSION

On appeal, St. Paul does not challenge the district court's entry of default against it. Rather, St. Paul's primary contention on appeal is that, *as a matter of law*, the district court erred in awarding interest and double damages to Mullen on its insurance claim. Accordingly, St. Paul asks this court to reverse the district court and enter summary judgment in its favor. Because Mullen contends that St. Paul's appeal is untimely and otherwise defective, we address Mullen's procedural challenges to the appeal before reaching the merits.

### A. *Procedural Challenges*

Mullen contends first that this court lacks jurisdiction to hear St. Paul's appeal because St. Paul did not file a timely notice of appeal. According to Mullen, the district court's December 20, 1990 order was a final judgment on the merits of its summary judgment motion. This order was entered on the civil docket on August 1, 1991. Because St. Paul did not file its notice of appeal from the judgment within 30 days of its entry, Mullen contends that this court lacks jurisdiction to hear St. Paul's appeal. We disagree.

 Pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, a notice of appeal in a civil case must be filed with the clerk of the district court "within 30 days after the date of entry of the judgment or order appealed from." Fed.R.App.P. 4(a)(1). "A judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of

---

**5.** Fed.R.Civ.P. 60(b)(1) provides in pertinent part:

on motion and upon such terms as are just, the court may relieve a party or a party's legal

representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect....

Civil Procedure." Fed.R.App.P. 4(a)(6).[6] This court has recognized the general rule that "a judgment becomes final and appealable when the court enters a decision resolving the contested matter, leaving nothing to be done except execution of the judgment." *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir.1988) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Thus, an order that determines liability and the amount of a damages award, is not a final judgment where the court has not yet determined how the burden of payment would be allocated between two parties and whether their obligation would be joint or several. *Id.* Similarly, a partial grant of summary judgment which does not resolve certain issues and, as to other issues, "adjudicates only liability and not damages—is not a final order, it cannot be said to 'resolv[e] the contested matter, leaving nothing to be done except execution of the judgment.'" *Domegan v. Fair*, 859 F.2d 1059, 1062 (1st Cir.1988) (quoting *Metropolitan Dist. Comm'n*, 847 F.2d at 14).

■ The district court's December 20, 1990 order simply read: "No opposition having been filed to plaintiffs' motion for summary judgment, the motion is allowed and summary judgment entered for plaintiffs." Such an order did not in this case "end[ ] the litigation ... leav[ing] nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). In its complaint, Mullen did not seek a "sum certain." Rather, with re-

spect to Count I (breach of contract by defendant), Mullen asked the court to

> enter an order directing the Defendant to pay forthwith to the Plaintiffs interest calculated at one percent (1%) over the prevailing prime rate of interest on the principal sum of $3,509,050.44 commencing not later than thirty (30) days from the date insured loss and damage was sustained [or,] ... [i]n the alternative, ... commencing no later than thirty (30) days from the date the Plaintiffs filed a sworn statement in proof of loss with defendant (January 3, 1988), together with costs and attorney's fees.

With respect to Count II (defendant's alleged violations of M.G.L. ch. 93A), Mullen asked the court to

> enter an order directing the Defendant to pay forthwith to the Plaintiffs a sum equal to not less than two (2), but not more than three (3) times the actual damages determined under Count I, together with costs and attorney's fees.

The ordering of summary judgment in Mullen's favor left unresolved the exact amount of relief to which Mullen would be entitled and for which St. Paul would be liable.[7] Where an order fails to state the amount of recovery and where that amount is not certain, the order can not be said to be a final judgment "leaving nothing for the court to do but execute the judgment." *Domegan*, 859 F.2d at 1061; *see United States v. Higginson*, 238 F.2d 439, 443 (1st Cir.1956) ("[F]ailure to include in the docket entry of January 6, 1956, the amounts to be recovered by plaintiffs is further indication that this notation in the docket was not to be an entry of judgment"); *see also Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.*, 526 F.2d 170, 172–173 (3d

---

**6.** Rule 58 of the Federal Rules of Civil Procedure requires that "[e]very judgment ... be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)...." Fed. R.Civ.P. 58(2). Rule 79 of the Federal Rules of Civil Procedure provides that civil docket entries "shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment

shall show the date the entry is made." Fed. R.Civ.P. 79(a).

**7.** In its motion for Summary Judgment, Mullen further defined its request for relief as to count I, asking for the sum certain of $479,012 representing interest computed at the contract rate. The relief Mullen sought as to count II, however remained indefinite. Mullen sought "an amount equal to at least two times, but not greater than three times the aforementioned judgment."

Cir.1975) (order appealed from not final until damages to which plaintiff is entitled are assessed); *Wheeler Machinery Co. v. Mountain States Mineral Enterprises, Inc.*, 696 F.2d 787 (10th Cir.1983) ("A judgment that awards a principal sum but reserves the matter of interest on that amount is not final for purposes of Rule 54(b) certification").

▮Nor can we say that the district court intended its December 20, 1990 order to be a final judgment. *See Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1066–67 (1st Cir.1987) (stating that a judge has a "special role ... in elucidating the meaning and intendment of an order which he authored"). On April 9, 1991, the court sent a Notice of Hearing to the parties setting a pretrial conference for April 23, 1991 in response to St. Paul's February 12, 1991 motion for relief from judgment. After the conference the court asked the parties to attempt a settlement and to report back to the court. These actions strongly suggest that the court considered the case to be ongoing as to damages. It was not until after the parties advised the district court on May 3, 1991 that they were unable to reach an agreement, that it granted Mullen's motion for approval of form of judgment and entered a "Judgment in a Civil Case" on October 8, 1991, itemizing in specific detail the amounts granted to plaintiffs and ordering "Total judgment for plaintiffs—$1,173,071.74." This was the final judgment in the case. As St. Paul filed its appeal on October 18, 1991—only 10 days after the district court had entered this judgment—its appeal was timely.

▮Mullen's second procedural attack on St. Paul's appeal asserts that we should not address the merits because summary judgment in Mullen's favor was appropriate as a sanction based on St. Paul's failure to respond to Mullen's summary judgment motion. Mullen argues that on October 12, 1990, the district court, noting the absence of recorded action in the case, ordered both parties to file a status report with the court. The court noted that "[f]ailure to file status report will result in the entry of an order of dismissal and/or default." Pursuant to the court's order, the parties filed a joint status report indicating that they were currently agreeing to stipulations of fact, "after which time plaintiffs intend to file a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure." The report went on to state that "[t]he parties anticipate agreement on the Stipulation and plaintiffs' motion by November 16, 1990, after which the Defendant will respond within the appropriate rule period." According to Mullen, because Local Rule 7.1 required St. Paul to file an opposition to Mullen's motion for summary judgment—filed as promised on November 16, 1990—St. Paul's failure to do so within the appropriate rule period constituted a breach of its commitment to Mullen and to the court, and was tantamount to a sanctionable violation of the district court's order. As this court has recognized a district court's discretion to impose sanctions such as default or dismissal, *see Anderson v. Beatrice Foods Co.*, 900 F.2d 388 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076 (1st Cir.1989); *Asociacion de Empleados del Instituto de Cultura Puertorriquena v. Rodriguez Morales*, 538 F.2d 915 (1st Cir.1976), Mullen contends that the district court's entry of summary judgment in its favor in the face of St. Paul's default should stand even if an incorrect disposition on the merits.

We are not persuaded. First, nothing in the record suggests that St. Paul failed to comply with a direct order of the court. The court's order of October 12, 1990 instructed that the parties file a status report and indicated that failure to do so would result in entry of dismissal or default. The parties, including St. Paul, filed a status report as directed. The court itself did not issue special directions concerning the filing of an opposition.

Second, nothing in Local Rule 7.1 states that failure to file an opposition to a motion is grounds for entry of default. The rule sets out the time within which an opposition must be filed, stating only that "[a]

party opposing a motion, shall file an opposition to the motion within fourteen (14) days after service of the motion, unless another period is fixed by rule or statute, or by order of the court ... Local Rule 7.1(a)(2)." The consequence, then, of failure to comply with the rule is that the party may lose the right to file an opposition.

Rule 56(e) of the Federal Rules of Civil Procedure provides that "if the adverse party does not [file an opposition], summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R.Civ.P. 56(e) (emphasis supplied). This court has made clear that the failure of a non-moving party to file timely opposition to a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party, but that "the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991) ("[B]efore granting an unopposed summary judgment motion, '[t]he court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law'") (quoting *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989)). Consequently, Mullen goes too far in arguing that it wins automatically because St. Paul did not timely oppose its motion.

B. *The Merits*

■ As we have stated, pursuant to Rule 56(e) and the case law interpreting it, entry of summary judgment in Mullen's favor was appropriate only if Mullen was entitled to judgment *as a matter of law* based on the undisputed and unopposed facts before the court. We turn now to the merits of the appeal to assess whether summary judgment was appropriate as a matter of law. Our review is *de novo*. *See, e.g., Rodriques v. Furtado*, 950 F.2d 805, 808

(1st Cir.1991); *Massachusetts by Dept. of Public Welfare v. Yeutter*, 947 F.2d 537, 541 (1st Cir.1991); *Petitti v. New England Telephone and Telegraph Co.*, 909 F.2d 28, 30 (1st Cir.1990).

■ The facts are not in dispute. The parties jointly stipulated: that Mullen submitted a "Partial Interim Sworn Statement in Proof of Loss" on December 3, 1987 in the amount of $1,500,000; that St. Paul made several payments to Mullen between February 1988 and August 1988; that on December 6, 1988 a final agreement was reached as to the exact amount of insured loss and damage, in the amount of $6,592,-506, with the exception of interest; and that on December 22, 1988 Mullen submitted a "Sworn Statement in Proof of Loss" for the agreed amount and that St. Paul paid that amount ($3,509,050.44). The dispute between the parties centered on whether St. Paul owed Mullen any interest on the amount paid in December 22, 1988.

Massachusetts' statutory fire policy provides that an insurance company

shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

M.G.L. ch. 175 § 99. In the district court Mullen claimed that because it executed a proof of loss on December 3, 1987, it should be paid interest on the amount that St. Paul owed beginning thirty days after that date. Mullen also claimed that by compelling it to institute litigation to recover amounts due under its insurance policy, St. Paul also engaged in unfair and deceptive acts and practices within the *meaning* of the Consumer Protection Act, M.G.L. ch. 93A. The district court entered judgment for Mullen without opinion, except to state "[n]o opposition having been filed to plaintiffs' motion for summary judgment, the motion is allowed and summary judgment entered for plaintiffs." [8] *See* Fed.R.Civ.P.

---

**8.** This statement is from the district court's December 20, 1990 order. As we have stated *su-*

52(a) ("[F]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56....").

On appeal St. Paul contends that as a matter of law summary judgment in favor of Mullen was inappropriate. According to St. Paul, the plain language of M.G.L. ch. 175, § 99 only requires interest to be paid commencing 30 days after the date an executed proof of loss for an *agreed figure* is received. Here, it was stipulated that the parties did not reach final agreement as to the exact amount of insured loss until December 6, 1988. Accordingly, St. Paul argues that the relevant date from which to determine whether interest was owing under the statute is the date on which Mullen submitted a sworn statement in proof of loss for the agreed figure—December 22, 1988. Because St. Paul delivered a check to Mullen for the agreed amount immediately upon its submission of this second proof of loss, it contends that no interest accrued under the statute. We agree.

The plain language of the statute makes clear that interest accrues on *"the agreed figure* commencing thirty days after the date an executed proof loss *for such figure* is received by the company." M.G.L. ch. 175 § 99 (emphasis supplied). We do not read the statute to require an insurer to pay interest on an amount of loss before any agreement has been reached as to the actual amount of loss. This interpretation is consistent with the Massachusetts Supreme Judicial Court's reading of the statute. In *Ben Elfman & Sons, Inc. v. Home Indemnity Co.*, 411 Mass. 13, 576 N.E.2d 670 (1991), the Supreme Judicial Court held that

> [a]n insurer is not required to pay a loss before its amount has been established by agreement or arbitration. In a case involving a loss established by agreement, the insurer must pay that loss within thirty days after the insured has filed a sworn proof of loss for the agreed figure and, if the insurer fails to do so, it

will be liable for interest commencing after expiration of the thirty-day period. *Ben Elfman & Sons, Inc.*, 411 Mass. at 19, 576 N.E.2d at 674. The court went on to conclude that "there is no liability for interest in this case because payment in every instance was made within thirty days after the plaintiff's submission of a statement of proof of loss for an agreed figure." *Id.* Here too St. Paul made payment immediately after Mullen submitted a statement of proof of loss for the *agreed figure.* Accordingly, Mullen was not entitled to judgment as a matter of law, and the district court should have entered summary judgment in favor of St. Paul despite St. Paul's failure to oppose Mullen's motion for summary judgment.

*Reversed. Costs to Appellants.*

*pra,* the district court did not enter a final judgment until October 8, 1991. In that document, titled "Judgment in a Civil Case," the court "ordered and adjudged that pursuant to

this Court's order of December 20, 1990 judgment entered for the Plaintiffs...." The court then went on to award interest, double damages, attorney's fees and costs.