Weaver v. Complex Medical                    CV-95-222-B    01/23/97

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Mary Weaver

    v.                                        Civil No. 95-222-B

Complex Medical
Products, Inc., et al.

**O R D E R**

    Mary Weaver brought this action on behalf of her employer-provided health benefits plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 et seq.(West 1985). Defendants include: (1) her former employer, Complex Medical Products (Complex), (2) the Complex Plan, (3) Robert Weston, the president of Complex, (4) Barbara Weston, the named administrator of the benefits plan, and (5) David Weston, who was acting plan administrator. Weaver also named as a defendant Great-West Life and Annuity Insurance Company (Great-West), who had contracted with Complex to provide health insurance under the terms of Complex's plan. Weaver seeks compensation for healthcare expenses she incurred in reliance upon the terms of Complex's benefits plan and reasonable attorney's fees and costs.

    Complex, its plan, and the Weston defendants filed a cross-claim against Great-West, seeking indemnification by Great-West

for any liability to Weaver, and a declaration that Great-West is estopped from arguing that it is not liable to reimburse Weaver based on Great-West's pre-approval of Weaver's medical treatment.

This action was stayed with regard to Complex following its petition for Chapter 11 Bankruptcy. Weaver later waived all claims against Great-West which I dismissed with prejudice.

Weaver now moves for summary judgment against the Weston defendants for breach of fiduciary duty under 29 U.S.C.A. § 1109(a)(West 1985), and for attorney's fees under 29 U.S.C.A. § 1132(g)(1)(West 1985). Great-West also moves for summary judgment on defendants' cross-claims. The Weston defendants did not file an objection to these motions within the allotted time pursuant to LR 7.1(b).

For the reasons that follow, I grant Weaver's motion for summary judgment against the Weston defendants to the extent it requests declaratory relief, but deny the motion to the extent it seeks compensation for her healthcare expenses. In addition, I grant Great-West's motion for summary judgment on the two cross-claims.

## I.  BACKGROUND

Prior to April 7, 1995, Complex employed Mary Weaver and

provided her medical and health benefits under the terms of a self-funded plan covered under ERISA. Great-West processed claims and provided other services to Complex under this plan. Upon receipt of claims, Great-West paid the amount and then reimbursed itself by drawing funds out of a bank account established by Complex. Great-West drew these reimbursements on a monthly basis along with its service fees for processing claims. The plan administrator, and not Great-West, had the final say as to which claims were paid out of the plan, and was the person to whom employees could appeal denials by Great-West. The named plan administrator was Barbara Weston.

Complex and Great-West's contract provided that Complex make monthly payments due on the first day of each insurance month, after the first premium payment. Complex could utilize a thirty-one day grace period upon default, but if the payment was not received within the grace period, Complex's insurance plan would automatically terminate.

The plan further required Complex's employees to obtain pre-admission certification of any surgical procedures recommended by their doctors. This process required the plan participant to contact a company called Private Healthcare Systems (PHCS) to ensure the medical necessity of the prescribed

3

medical treatment.

Late in 1994, Weaver's physicians recommended that she undergo carotid artery surgery because of a risk of stroke. She received pre-admission certification from PHCS for the procedure in a letter dated October 19, 1994. The certification specifically stated that it was not a guarantee of coverage and that coverage is determined by the health benefits plan. According to her affidavits, Weaver underwent the surgery on either the 25th or 26th of October, 1994. Thereafter, she paid all of her deductibles and co-payments to her medical care providers, as required under the terms of the Complex plan.

After Weaver's surgery, Great-West processed and paid her bills until November 22, 1994. On that day, Complex defaulted on its monthly payment to Great-West, who thereafter terminated processing Complex employee claims. Complex failed to take advantage of the thirty-one day grace period and by the end of December, Complex still had not made its payment to Great-West. Complex and Great-West corresponded on this matter into February of 1995, but failed to work out an arrangement for Great-West to resume its contractual duties.

In January 1995, Weaver received past due notices from her health care providers for bills not paid by Great-West. She

4

contacted Great-West and was informed that Complex's Plan was on administrative hold and it was suggested that she speak to Barbara Weston, who was listed as the plan administrator. Weaver subsequently discovered that Barbara Weston had been laid off by Complex early in 1994, but was still listed as the administrator of the plan. Weaver thereafter contacted Robert Weston, Complex's president, who informed Weaver that his son, David Weston, was acting administrator. Weaver next met with David, who neither offered to assist in the payment of Weaver's medical bills nor assured her that the plan was going to be taken off administrative hold.

Since all employees went to Robert Weston "in the first instance" whenever they had problems with the health benefit plan, Weaver returned to see him after her unproductive meeting with David. Eventually, both Robert and David assured her that her medical bills would be taken care of and that the plan would be taken off administrative hold.

Prior to this incident, Weaver never received any information concerning the plan's financial condition, including a copy of the plan' annual financial report. Neither was Weaver informed that Complex had failed to make payments to Great-West. These facts are corroborated by Margaret Ricardo, who had a

5

similar problem under this health plan, and submitted an affidavit in support of Weaver's motion for summary judgment.

Weaver seeks summary judgment asserting that the Westons were fiduciaries under ERISA and that they breached their duties by not providing annual reports to plan participants or by warning Weaver that her benefits plan was in jeopardy before she had her surgery. Weaver asserts that as a result of these breaches, she incurred the expense of her carotid artery surgery, which she could not afford without health insurance coverage.

In its motion for summary judgment, Great West argues that it has no duty to indemnify because the Weston defendants are not parties to the contract, nor is Great-West a co-fiduciary under the terms of the contract. Additionally, Great-West contends that the estoppel argument raised in the second cross-claim is unsupported by the facts as Great-West never guaranteed Weaver coverage.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the facts taken in the light most favorable to the non-moving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of Law. Fed. R. Civ. P. 56(c);

6

Barbour v. Cynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995), cert. denied, 116 S. Ct. 914 (1996). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the facts are undisputed, the moving party must establish that it is entitled to judgment as a matter of law. In Re Varasso, 37 F.3d 760, 764 (1st Cir. 1994).

In this case, the Weston defendants have filed no objection to either motion for summary judgment. Therefore, the movants' properly supported facts are taken as undisputed and summary judgment should be entered if judgment is warranted in light of these facts. LR 72(b)(2); Jaroma v. Massey, 873 F.2d 17,21 (1st Cir. 1989). See generally, Mullen v. St. Paul Fire and Marine Insurance Company, 972 F. 2d 446, 452 (1st Cir. 1992); Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991). I apply this standard to both summary judgment motions.

## III. <u>DISCUSSION</u>

**A.** <u>**Weaver's Motion for Summary Judgment**</u>

ERISA's civil enforcement provisions permit a plan participant or beneficiary to bring a civil action for appropriate relief under § 1109.   29 U.S.C.A. § 1132(a)(2)(West 1985).   Section 1109 provides that a fiduciary who breaches the statutory duties of ERISA is liable to make good to the plan any losses to the plan resulting from each breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.   29 U.S.C.A. § 1109(a) (West 1985). Accordingly, Weaver brought this action on behalf of the plan.

In order to prevail under § 1109, a plaintiff must establish that the defendant is a fiduciary, that the defendant breached his duty, and that the plaintiff was harmed as a result of that breach.   29 U.S.C.A. § 1109(a)(West 1985); <u>see also</u> <u>Jensen v. Sipco, Inc.</u>, 867 F.Supp. 1384, 1395 (N.D. Iowa 1993), <u>aff'd</u>, 38 F.3d 945 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1428 (1995).

**1.  Weston Defendants as Fiduciaries**

A person is a fiduciary with respect to a plan covered under ERISA to the extent that person "exercises any discretionary authority or discretionary control respecting the management of such plan or exercises any authority or control respecting

8

management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A)(I)(iii) (West Supp. 1996). The term "fiduciary" is to be construed broadly and an individual's title is not necessarily determinative of his status as a fiduciary. <u>Consolidated Beef Industries v. New York Life Ins. Co.</u>, 949 F.2d 960, 964 (8th Cir. 1991), <u>cert. denied</u>, 503 U.S. 985 (1992). ERISA further requires that the plan instrument designate one or more "named fiduciaries" who jointly or severally have authority to control and manage the operation and administration of the plan. 29 U.S.C.A. § 1102(a)(1) (West 1985). The named fiduciary can be designated either in the plan instrument or in the manner prescribed by the plan instrument. 29 U.S.C.A. § 1102(a)(2) (West 1985).

Here, the plan instrument lists Barbara Weston as the plan administrator, a copy of which was submitted by Weaver in support of her motion for summary judgment. Weaver indicates that when she contacted Great-West in January 1995 and learned that the plan was on administrative hold, Great-West informed her that the listed plan administrator was Barbara Weston. As these facts are

9

undisputed by Barbara Weston, I find that she meets the definition of a named fiduciary under ERISA.

Robert Weston identified David Weston as the acting plan administrator when Weaver inquired about Great-West's refusal to pay her medical bills. The affidavits of both Weaver and Ricardo support the allegation that David Weston was serving as plan administrator when they learned the plan was on administrative hold. Barbara Weston's fiduciary status does not foreclose David Weston also being a fiduciary because ERISA specifically provides that more than one fiduciary may be appointed to have joint or several authority over the administration of the plan. 29 U.S.C.A. § 1102(a)(1) (West 1985).

Robert Weston was not a named fiduciary under the plan; however, an individual is a fiduciary of an ERISA plan to the extent they exercise any discretionary authority or control of the plan. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). This Circuit has specifically held that ". . . a party may be treated as a plan administrator where it is shown to control the administration of a plan." Law v. Ernst & Young, 956 F.2d 364, 373 (1st Cir. 1992). In Law, the employer acted as plan administrator of an ERISA-covered pension plan with respect

10

to the dissemination of plan benefits. Here, Robert Weston, according to both the Weaver and Ricardo affidavits, exercised administrative duties. He met with Weaver on five separate occasions to discuss her problem with unpaid medical bills and likewise met with Margaret Ricardo in 1995 when she had similar problems with her health care benefits. Weaver's affidavits assert that it was common practice at Complex for employees to go directly to Robert Weston with health benefit problems instead of the named administrator. Ricardo states that while David Weston was acting administrator, Robert was also involved in the administration of the benefits plan. Therefore, by assuming a role in the administration of the plan, Robert also owed fiduciary duties to Weaver.

I therefore find that all three Weston defendants are administrators of the plan under ERISA and therefore owe fiduciary duties to the plan covering the employees at Complex Medical. My next inquiry is whether the Weston defendants breached any duties owed to the plan which resulted in injury to Weaver.

## 2. Westons' Breaches of Fiduciary Duties[1]

### a. Failure to provide summaries of annual reports

ERISA provides that a plan fiduciary who breaches the duties imposed by the statute is personally liable to make good to the plan any losses resulting from that breach. 29 U.S.C.A. § 1109(a) (West 1985). These duties are set out in § 1104, which reads, in part:

> (1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (I) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matter would use in the conduct of an enterprise of a like character and with like aims;
>
> . . .
>
> (D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C.A. § 1104 (West 1985 & Supp. 1996).

---

[1] Because plaintiff has brought this case under a breach of fiduciary duty theory, my decision turns on defendants' failure to disclose information relating to plaintiff's plan, and not on defendants' failure to make its required payments to the plan.

The statute further provides that:

> Within 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules for such fiscal year, . . . and such other material as is necessary to fairly summarize the latest annual report.

29 U.S.C.A. § 1024(b)(3) (West Supp. 1996).

Weaver's and Ricardo's affidavits support the fact that Complex plan participants never received the summaries of the plan's financial report required under § 1024. However, Weaver fails to provide adequate evidence that this breach had any causal connection with her eventual injury. The evidence submitted with the motion for summary judgment shows that Weaver found out in January 1995 that Great-West had not paid her bills. The evidence submitted by Great-West in support of its motion shows that Complex defaulted on November 22, 1994. The plan documentation submitted by Weaver in support of her motion plainly indicates that the fiscal year of the plan ends on April 30th of each year. No reasonable juror could conclude, based on the record before me now, that a financial statement concerning plan activity prior to May 1, 1994 would have alerted Weaver to Complex's impending default which occurred more than six months later. Thus, while a breach of fiduciary duty occurred, Weaver

13

has not adequately demonstrated that there is a causal connection between that breach  and her injury.

        b.  <u>Failure to notify participants that health care benefits were jeopardized</u>

Weaver's second claim for breach of fiduciary duty is based on duties imposed by the federal courts as a matter of federal common law.  Since ERISA is based upon the common law of trusts, a fiduciary, like a trustee, has an affirmative duty to disclose to the beneficiaries circumstances that jeopardize his benefits. <u>Armstrong v. Jefferson Smurfit Corp.</u>, 30 F.3d 11, 12 (1st Cir. 1994) (dictum);  <u>Acosta v. Pacific Enterprises</u>, 950 F.2d 611, 619 (9th Cir. 1991) (citing <u>Dellacava v. Painters Pension Fund</u>, 851 F.2d 22, 27 (2d Cir. 1988)); <u>Rosen v. Hotel & Restaurant Employees & Bartenders Union</u>, 637 F.2d 592, 599-600 (3d Cir.), <u>cert. denied</u>, 454 U.S. 898 (1981).  As the affidavits of both Weaver and Margaret Ricardo point out, Complex's employees were never informed that Complex had failed to make the required payments to Great-West under the terms of the plan until after Great-West refused to pay their medical bills.  Both Weaver and Ricardo discovered that the plan was on administrative hold only by calling Great-West themselves.

While Weaver has properly supported her contention that a breach has occurred, she has again failed to demonstrate that

14

this breach caused her injury.  She asserts in her affidavits that if she had been aware that Complex had failed to make its payments to Great-West, she would have taken steps to make alternative health insurance arrangements before undergoing carotid artery surgery.  However, her surgery took place on October 25, 1994, and Complex did not default until November 22, 1994.  Even if the Westons had met their fiduciary duties, Weaver would not have known about the plan's default until after her surgery.  While it is possible that the Westons knew the plan was in jeopardy on October 25, 1994, there is no evidence before me to indicate this fact.  Without some evidence that the fiduciaries knew the plan was in jeopardy **before** Weaver had her operation, it is not appropriate to grant Weaver summary judgment on her claim for compensation of healthcare expenses.

Nonetheless, Weaver has requested declaratory judgment against the Weston defendants for breach of fiduciary duties. Declaratory judgment is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.  Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir. 1992); Minnesota Mining and Mgf. Co. v. Norton Co., 929 F.2d 670, 672-73 (Fed. Cir. 1991).  Here, clarification that the Westons breached fiduciary duties owed to

15

the plan may serve to bring about early settlement of this claim, and will expedite final judgment should Weaver establish a causal connection between the breaches and her alleged damages. Therefore, I grant Weaver's motion for summary judgment in part and, pursuant to 28 U.S.C.A. § 2201-2202 (West Supp. 1996), declare that the Westons breached fiduciary duties under ERISA by (1) failing to provide annual reports to plan participants as required by statute and (2) failing to inform plan participants that their benefits were jeopardized.

### 3. Attorney's Fees

Weaver also requests reasonable attorney's fees under 29 U.S.C.A. § 1132(g)(1) (West 1985), which provides, "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorney's fees and costs of action to either party." Because final judgment on this matter will not be entered as a result of this order, an award of attorney's fees and costs is not appropriate at this time.

## B. Great-West's Motion for Summary Judgment

In their answer to Weaver's complaint, the defendants cross-claimed against Great-West on two theories. First, they assert that any liability in this matter arises out of either a breach

16

of contract or breach of fiduciary duty on the part of Great-West, requiring it to indemnify the other defendants. Second, they assert that Great-West represented to Weaver that she would be covered for her carotid artery surgery, and therefore is estopped from either denying full liability for Weaver's claim or from asserting that the other defendants had any liability for Weaver's claim.

Complex created a self-funded health benefits plan in order to provide healthcare benefits to its employees. Complex then contracted with Great-West to provide claims processing under this plan. Complex provided for the appointment of plan administrators who owed fiduciary duties to plan beneficiaries as required by 29 U.S.C.A. § 1102 (West 1985). Complex owed duties under ERISA to its employees and under contract to Great-West. In return, Great-West owed contractual duties to Complex, but not to the plan administrators or the plan itself.

Even assuming that the contract at issue imposes duties upon Great-West to the benefit of the plan or the plan fiduciaries, there is no evidence in the record that would support a finding that a breach of duty ever occurred.

Great-West is also not a plan fiduciary under ERISA, as is clearly set out in its contract with Complex. The contract

17

states "[Great-West] agrees to perform services which involve the performance of nondiscretionary duties," and that "under no circumstances will [Great-West] be designated as plan administrator or a fiduciary of the plan. Nothing herein shall be deemed to constitute authority or control respecting management of the plan . . . ." Thus, Great-West had no obligations under the contract that would qualify it as a co-fiduciary as defined by 29 U.S.C.A. § 1002(21)(A) (West Supp. 1996). Furthermore, the record is devoid of any facts to support an allegation that Great-West exercised any discretionary duties with regard to the plan, despite the terms of the contract. Great-West could breach no fiduciary duty to Weaver, and therefore, defendants' first cross-claim fails.

Defendants' second cross-claim asserts that Great-West is estopped from denying complete liability for Weaver's medical bills because it gave her pre-admission certification for her carotid artery surgery. It seems to be the Westons' contention that the pre-admission certification served as a suretyship, upon which Weaver relied in electing to undergo the procedure. Therefore, contractual duties between Great-West and Weaver are the true source of Weaver's cause of action.

18

As Great-West points out, however, pre-certification was conducted not by Great-West, but by Private Health Care Services, under the terms of the Complex plan. The pre-certification letter sent to Weaver did not come from Great-West, but rather from PHCS. If PHCS was acting as an agent of Great-West, New Hampshire law will estop Great-West from arguing against its own representative only if Weaver reasonably relied upon them. In addition, reasonable reliance upon the acts of the adverse party is an essential element of estoppel. Hawthorne Trust v. Main Savings Bank, 136 N.H. 533, 537-538 (1992). Here, the pre-certification letter states, "Health Care Review Service's certification does not guarantee coverage or payment. Your eligibility for coverage is determined by your health benefit plan." Thus, Weaver could not have reasonably relied upon the certification as a promise to pay. Therefore, Great-West is entitled to summary judgment on the cross-claims asserted by the Weston defendants and the Complex Plan.[2]

---

[2] Because of Complex's pending bankruptcy, and the resulting stay on this proceeding with regard to Complex, Great-West's motion for summary judgment was made only with regard to the Weston defendants and the Complex plan.

19

## IV.  CONCLUSION

I grant Weaver's motion for summary judgment in part (document no. 37) to the extent it seeks a declaratory judgment that the Westons breached their fiduciary duties by failing to provide annual reports to plan participants and by failing to inform plan participants that plan benefits had been jeopardized by Complex's  failure to pay its monthly insurance premium in November 1994.  I deny Weaver's motion to the extent it requests that the Weston defendants be ordered to reimburse the plan for resulting losses, since no causation was demonstrated between the breaches of fiduciary duties and Weaver's eventual losses.

I grant Great-West's motion for summary judgment (document no. 38) against the Weston defendants and the Complex plan with regard to both cross-claims.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

January 23, 1997

cc:   Peter D. Anderson, Esq.
      Marc L. Van De Water, Esq.
      Barbara Weston, pro se
      Robert E. Weston, pro se
      David Weston, pro se
      Steven Grill, Esq.
      Jennifer Eber, Esq.

20