**BIG LIFT SHIPPING COMPANY (N.A.) INC., Plaintiff,**

v.

**BELLEFONTE INSURANCE CO., Midland Insurance Co., Pennsylvania Lumbermens Mutual Insurance Co., The Lumbermens Mutual Insurance Company, Ranger Insurance Co., and Republic Insurance Co., Defendants.**

**No. 83 Civ. 4655(MP).**

United States District Court, S.D. New York.

Oct. 9, 1984.

Burlingham, Underwood & Lord by Terry L. Stoltz, Richard J. Reisert, New York City, for plaintiff.

Bigham, Englar, Jones & Houston by Donald T. Rave, Jr., Donald F. Connors, New York City, for defendants.

DECISION AND OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff sues to recover for damages arising from a marine casualty to a vessel insured under a policy of insurance issued

through the New York Marine Managers, Inc. ("New York Marine") as agent and marine manager on behalf of the defendant insurance companies named herein. Jurisdiction of the Court is based on the Court's Admiralty and Marine Jurisdiction, 28 U.S.C. § 1333 (1982), the claim being within the meaning of Rule 9(h), Federal Rules of Civil Procedure. Liability was denied for failure to give timely notice of the casualty to the assurers. The matter was presented to the Court at a Bench Trial.

After taking the proofs and hearing counsel, and upon due deliberation, the Court determines that the plaintiff is barred from recovering herein because it breached the conditions of the insurance requiring that notice of the ocurrence which resulted in loss, damage and expense be given as soon as practicable, and that process, pleading and papers relating thereto be forwarded promptly, as required by the policy, to the assurers.

## FACTS

Big Lift Shipping Company (N.A.) Inc. (hereafter Big Lift), a wholly owned subsidiary of Holland Amerika Lines, entered into a time charter of the M/V DANAOS with the owner of the latter on December 7, 1977.

On December 23, 1977, while under the charter, DANAOS suffered a casualty to a winch block resulting in damage to its cargo and to the vessel's crane.

Big Lift claimed that it had no office or employees in the U.S.A.—that it had agents in Houston, Texas, where William Hepburn was the Operations Manager.

The insurance coverage required by the charter party was split; one policy covered liability in connection with the cargo, and another policy covered damages to the vessel under charter. The policies were issued by two different groups of insurance underwriters. The insurance on the cargo was issued by the Standard Steamship Owners Protection and Indemnity Association (Standard Club), represented in New York by Lamorte Burns & Co., Inc.

Big Lift's parent company, through its insurance department, arranged the vessel insurance required under the charter party with New York Marine representing the underwriters through Johnson & Higgins acting for Holland Amerika.

The policy on which this suit is brought was executed in New York, having been drafted, prepared and submitted to New York Marine in New York by Johnson & Higgins, and became effective June 8, 1977. New York Marine bound the defendant insurers in stated shares to a policy of Charterers Legal Liability Insurance, reciting that it was made for Holland Amerika Holding N.V. Rotterdam and/or Big Lift N.V. and/or Affiliated Companies. The plaintiff is such an "affiliated company." The insurance coverage was for damage occurring to the vessel while under the charter.

The policy's notice of loss requirement reads as follows:

2. It is understood and agreed by the assured that in the event of any occurrence which may result in loss, damage and/or expense for which these Assurers are or may become liable under this insurance, notice thereof shall be given to these Assurers as soon as practicable and any and every process, pleading, and paper of any kind relating to such occurrence shall be forwarded promptly to these Assurers.

Holland Amerika failed to notify its Houston agents that the insurance covering the cargo and the vessel was split between two companies, and no copy of the policy was furnished to the U.S.A. agents. The only document which the agents had in their files was a book of the Rules of the Standard Club which they had received a number of years earlier.

Plaintiff, through error for which it and its parent company alone are responsible, failed to comply with the Notice of Loss requirement of the policy sued on, and did not notify defendants of the accident until August 1, 1980, some 31 months after the occurrence.

Plaintiff's Operations Manager in the U.S.A., on learning of the casualty, promptly went to view the vessel and then called his office in Houston to inquire who the underwriter of insurance was, and was told that it was Lamorte Burns. The Operations Manager then notified Lamorte Burns of the casualty and the latter arranged for an immediate survey and appearance of counsel on behalf of the plaintiff, and the Standard Club. However, neither plaintiff nor its parent notified the defendants or their representatives of the occurrence until nearly three years later.

On January 16, 1978, the U.S.A. agents for plaintiff, by Telex, notified Holland Amerika of the casualty and the name of the agent for the underwriters who was notified thereof, viz., that the incident had been reported immediately to Mr. A. Burns of Lamorte Burns. At the time, and indeed up until a week or so prior to this trial in 1984, the plaintiff's Operations Manager and the President of Big Lift were both unaware that Holland Amerika had split the insurance and placed the cargo coverage with one underwriter and the vessel insurance with the defendants. The Operations Manager neither had a copy of the policy in suit nor sought to examine a copy of the contract or knew the scope of the coverage obtained from the Standard Club or that the latter was limited to cargo. Holland Amerika's insurance department took no steps to inform its U.S.A. Operations Office that the Standard Club's insurance coverage was limited to cargo damage or that the vessel was insured by other underwriters, namely, the defendants, through New York Marine.

Merely assuming without checking with Holland Amerika, or seeking to obtain and read the insurance coverage from the Standard Club, the only notice given at the time of the occurrence of the casualty loss, was given by the plaintiff's Operations Manager to the Standard Club through Lamorte Burns. It was not until April 21, 1980 that Lamorte Burns happened to notify Big Lift that the Standard Club only covered liability of Big Lift on cargo and not for physical damage to the vessel. It was then that plaintiff consulted with Holland Amerika, which had placed the liability insurance covering the vessel, that plaintiff became aware that liability for vessel damage was insured by defendants who were then, after 100 days, for the first time, placed on notice of the loss by letter from Holland Amerika's brokers, Johnson & Higgins, under date of August 1, 1980. In explanation for the delayed notice Johnson & Higgins wrote that "Apparently this matter was originally reported to the assured's P & I Club under the mistaken impression that their coverage included damage to the vessel."

New York Marine, on behalf of the defendants, responded to Holland Amerika's broker that the first notice to it of the accident was two and three-quarter years later, and that this certainly would not appear to be notice as soon as practicable as required by the policy, and New York Marine reserved all of defendants' rights and notified Johnson & Higgins that its comments in the letter were strictly without prejudice to the terms and conditions of the policy and without waiving any rights or defense which they might have under the policy.

At the time of the first notice to the defendants of the occurrence, plaintiff was in arbitration proceedings in London with the vessel owner concerning damage to the vessel and liability for unpaid hire claimed by the owner, the arbitration having been commenced in January, 1978. In October, 1978 the shipper of the damaged cargo sued in the Southern District of New York against DANAOS and Big Lift for damages; that suit was settled by payment of $10,000 to the shipper. The vessel owner thereupon added the amount of the settlement as a claim against Big Lift, the charterer, in the London arbitration proceedings.

In April, 1982, while the arbitration was still undetermined, representatives of Big Lift and Holland Amerika held a meeting with representatives of the defendants who were asked to accept the claim on the in-

surance policy issued by the defendants, but the defendants declined to do so. On August 11, 1982 the London arbitrators rendered an award in favor of the vessel owner against Big Lift for repairs to the vessel; withheld charter hire, and the amount paid to settle the cargo owner's claim. Interest was added to the award, and Big Lift was obliged to pay the fees of the owners' attorneys and all costs of the arbitration. All those amounts were paid by Big Lift.

Big Lift has also incurred legal fees and disbursements to its London solicitors, and to its counsel in this suit. It claims against the defendant insurance companies in this suit the total amount which it has been required to pay and has incurred by way of the fees and expenses.

■ The parties agree that this is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, as this dispute involves a contract of marine insurance consisting of the charterer's legal liability policy issued to insure plaintiff in its capacity as charterer of ocean-going vessels against liability for certain enumerated perils. Marine insurance contracts are maritime contracts and are subject to the admiralty and maritime jurisdiction of the Federal Courts. *Berwind-White Coal Mining Co. v. City of New York*, 135 F.2d 443 (2d Cir.1943); *Granite State Minerals v. American Ins. Co.*, 435 F.Supp. 159 (D.C.Mass.1977).

The policy was prepared in New York by plaintiff's broker, Johnson & Higgins, and was executed and delivered by defendants in New York, and therefore is a New York contract. *E.g., Wilburn Boat Co. v. Firemen's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955) *John Hancock Ins. Co. v. Yates*, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936).

■ There is no federal statute or admiralty rule of the Supreme Court governing the interpretation of Notice of Loss provisions; they are governed by state, in this case, New York, rather than federal law. *Wilburn Boat Co., supra. See also, Puro-*

*fied Down Products Corp. v. Travelers Fire Ins. Co.*, 278 F.2d 439, 441, note 1 (2d Cir.1960); see, generally, Gilmore and Black, *The Law of Admiralty* (2d ed. 1975) pp. 48–51, 67–71, 303–305, 464. New York law has been applied by this Court to the interpretation of Notice of Loss provisions in marine insurance policies in *Neptune Lines v. Hudson Valley, etc.*, 1973 A.M.C. 125 (not otherwise reported), *Baltic Shipping Co. v. Maher Terminals*, 1980 A.M.C. 410 (S.D.N.Y.1979; not otherwise reported), and in *Howard Fuel v. Lloyds Underwriters, et al.*, 588 F.Supp. 1103 (S.D.N.Y. 1984, Sprizzo, D.J.).

■ It is the law of New York that compliance with a Notice of Loss provision in a contract of marine liability insurance is a condition precedent to the insurer's liability and that the insurer need not show that it was prejudiced by the assured's failure to do so. The giving of the required notice affords the insurer an opportunity to protect itself, and is a condition precedent to liability. *Security Mutual Insurance Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (Ct.App. 1972). New York courts consistently have held that the insurer need not show that it was prejudiced by a late notice in order to maintain the defense of noncompliance with the condition. *Id.* 340 N.Y.S.2d at p. 905, 293 N.E.2d 76.

■ The policy in suit requires that notice of any occurrence which may result in loss, damage, or expense for which the insurers may be liable be given "as soon as practicable." Those words have been interpreted to mean that the notice is required within a reasonable time under all the circumstances. *Id.* 340 N.Y.S.2d at p. 906, 293 N.E.2d 76. Absent some legal excuse or mitigating circumstances, the plaintiff's 31½ month delay was unreasonable as a matter of law. Much shorter delays have been held unreasonable as a matter of law. *Deso v. London & Lancashire Indemnity Co. of America*, 3 N.Y.2d 127, 164 N.Y. S.2d 689, 691, 143 N.E.2d 889, 890 (Ct.App. 1957) (a 51-day delay); *Reina v. United States Casualty Co.*, 228 App.Div. 108, 239

N.Y.S. 196 (1st Dep't. 1930) aff'd. 256 N.Y. 537, 177 N.E. 130, (1931) (27 days delay, and notification of the wrong insurer held not to excuse the late notice.) Similarly, in *Mason v. Allstate Insurance Co.*, 12 A.D.2d 138, 209 N.Y.S.2d 104 (2d Dep't. 1960) a 30-day delay was held unreasonable and negligence in notifying the wrong insurer did not excuse the failure to give notice to the proper one.

This Court has applied and reaffirmed the New York law. In *Gardner-Denver Co. v. Dic-Underhill Const. Co.*, 416 F.Supp. 934 (1976) it was stated that:

It is established New York law that compliance with the notice provision of an insurance contract is a condition precedent to an insurer's liability, and that an insurer need not show prejudice before it can assert the defense of non-compliance. [Citations omitted]. Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy. [Citations omitted]. A provision that notice be given 'as soon as practicable' after an occurrence merely requires that notice be given within a reasonable time under all the circumstances. [Citations omitted].

In that case, involving a 20-month delay in reporting the loss, the Court held as a matter of law that notice to the wrong insurer was insufficient to relieve it of its breach of the contract in a 20-month delay in reporting the loss. For a like holding see *Neptune Lines v. Hudson Valley, etc.*, 1973 A.M.C. 125 (S.D.N.Y., not officially reported).

Parenthetically, even if this Court were to accept plaintiff's excuse that by notifying the Standard Club it acted reasonably in believing that it had notified the proper insurer, plaintiff still failed to give prompt notice to defendants. Plaintiff became aware, in writing, on April 21, 1980, that the Standard Club did not cover the damage to the vessel, but waited another hundred days before notifying the defendants of the accident.

The plaintiff appeals to the equitable powers of the Court said to be implicit when sitting in admiralty, to fashion an admiralty rule requiring defendants to establish prejudice to support a disclaimer based solely on late notice. Plaintiff cites former Chief Judge Brown, who described the Admiralty Court's role in *Compania Anonima Venezolana de Nav. v. A.J. Perez Exp. Co.*, 303 F.2d 692, 699 (5th Cir. 1962):

The Chancellor is no longer fixed to the woolsack. He may stride the quarterdeck of maritime jurisprudence and in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels.

However, even if equitable mitigation of the rules were applied here, the plaintiff would not be entitled to a recovery, since the evidence amply demonstrates significant prejudice to the defendants as a matter of fact from the late notice and the notification to the wrong insurer.

Defendant lost the opportunity to which the contract gave it to handle the defense of the claim—it was not bound to accept the assured's methods, procedures or skills, nor was it bound to accept without show of prejudice the manner in which the assured defended the claims. The time lapse prior to notice precluded setting up insurance reserves to meet any monetary obligation that was established. The Court can take judicial notice of the vast changes in economics in the intervening 31 months with interest rates and premium rates skyrocketing in the interim. There was no justification in fact for the lack of knowledge by the U.S.A. agents of the insurance coverage that existed and the omission of Holland Amerika to tell its agents who carried the insurance, or to itself give proper notice; these are legally inexcusable.

No facts were credibly established to show any waiver or intent of the defendants to waive their right to disclaim coverage and no factual basis appears in the record which is credited that the defendants are estopped or should be estopped to assert non-coverage.

The complaint is dismissed on the merits, with costs.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Federal Rules of Civil Procedure.

SO ORDERED.