**Carlos CORTES MOLINA,**
**et als., Plaintiffs**

**v.**

**TL DALLAS (SPECIAL RISKS) LTD.;**
**Hamburger Versicherungs,**
**Defendants.**

**Civil No. 06–1359 (DRD).**

United States District Court,
D. Puerto Rico.

March 31, 2008.

Roberto Marquez–Sanchez, Roberto Marquez Law Office, San Juan, PR, for Plaintiffs.

Manolo T. Rodriguez–Bird, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is Defendants', TL Dallas (Special Risks) Ltd., and Hamburger Versicherungs AG, *Motion for Summary Judgment* (Docket Nos. 20, 21, 22). There being no opposition from Plaintiffs, the Court will treat Defendants' *Statement of Uncontested Material Facts* (Docket No. 22), as admitted and use them as basis for the disposition of the motion for summary judgment. *See Mercado–Alicea v. Puerto Rico Tourism Co.,* 396 F.3d 46 (1st Cir.2005); *see also Torres Rosado v. Rotger Sabat,* 204 F.Supp.2d 252 (D.P.R. 2002).

Pursuant to Local Rule 56(e), of United States District Court for the District of Puerto Rico,

[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page of paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

(*Emphasis ours* ).

In *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001), the First Circuit Court stated "that 'failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted.'" (*Quoting Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000)). "This 'anti-ferret' rule aims to make the parties organize the evidence rather than leaving the burden upon the district judge." *See Alsina–Ortiz v. Zoe Laboy,* 400 F.3d 77, 80 (1st Cir.2005).

We encouraged district courts to adopt "anti-ferreting" rules, which warn parties opposing summary judgment that, to preclude judgment as a matter of law,

they must identify factual issues buttressed by record citations. "[O]nce so warned," we added, "a party's failure to comply would, where appropriate, be grounds for judgment against that party."

See *A.C. Orssleff's EFTF*, 246 F.3d at 33 (*quoting Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir.1983)).

For the reasons stated below, Defendants', TL Dallas (Special Risks) Ltd., and Hamburger Versicherungs AG, *Motion for Summary Judgment* (Docket Nos. 20, 21, 22), is hereby **GRANTED.**

### I. UNCONTESTED FACTS

Since Plaintiffs failed to properly oppose Defendant's statement of uncontested facts in support of its motion for summary judgment, the Court hereby accepts, as admitted, and incorporates in toto to the instant Opinion and Order, the following facts as presented by the Defendants (*See* Docket No. 22):

1. Co-defendant TL Dallas (Special Risks) Ltd. (hereinafter "TL Dallas") is a business entity organized and existing by virtue of the laws of England, where it also has its principal office and principal place of business. See Exhibit 1 of this Statement, Verified Statement from Mr. Alexander Mark Thomas Director of TL Dallas, at parag. 3. See also plaintiffs' Amended Complaint, Docket No. 5, at parag. 3, and defendants' Answer, Docket No. 6 at parag. 3.

2. Co-defendant Hamburger Versicherungs is a marine insurer (underwriter) with principal office and principal place of business in Germany. See Amended Complaint, Docket No. 5, at parag. 4, and Defendants' Answer, Docket No. 6, at parag. 4.

3. TL Dallas is not an insurance company. TL Dallas is engaged in business as a marine underwriting agency, and claims manager, for several marine insurers throughout the world, including the co-defendant in the instant action, Hamburger Versicherungs AG (hereinafter "Hamburger"). See Exhibit 1 at parag. 4.

4. TL Dallas has never been an insurer and is not authorized to conduct business as an insurer anywhere in the world. This is a matter of public record with the records maintained by the government in England for the benefit of the public at the Registrar of Companies and the Financial Services Agency. Exhibit 1, at parag. 4; See also Letterhead of Cover Note issued by TL Dallas (included as part of Exhibit B of the Verified Statement of Mr. Thomas) which describes it as "Insurance Brokers, Marine Underwriting Agents, Credit Insurance Specialists, Independent Financial Advisors".

5. Neither the underwriter, Hamburger, or its underwriting claims agent, TL Dallas, have any agents in Puerto Rico. Exhibit 1, at parag. 5.

6. TL Dallas has bound and delivered marine insuring agreements to residents of Puerto Rico but only through inquiries or applications for insurance received through the insurance agents or brokers of these residents of Puerto Rico. Exhibit 1, at parag. 6.

7. Neither of the brokers or insurance agents mentioned by the plaintiff in the Complaint filed in this action, Joe Carn Jr., and/or Joseph Carn and/or Prime Life Partners a/k/a Prime Quality Marine P & C (hereinafter "Carn") or Benjamín Hernández Alvarado a/k/a Benjamín Hernández Insurance Broker (hereinafter "Benjamín Hernández") are agents, representatives, or employees of Hamburger or TL Dallas. See Exhibit 1, at parag. 7; see also Exhibit 2, pages 14–15 of co-

plaintiff, Carlos Cortés Molina's deposition, where he indicates that Benjamín Hernández was his insurance broker.

8. Carn and/or Benjamín Hernández are insurance agents or brokers in Puerto Rico, who acted on Cortés Molina's behalf to obtain insurance for his boat, the M/V BRAMELA, a 44 foot Wellcraft built in 1999. See Exhibit 1, at parag. 8; plaintiffs' Amended Complaint, Docket No. 5, at parag. 5, and defendants' Answer, Docket No. 6, at parag. 5. See also Exhibits 3, copy of page 1 (only) of the Complaint filed by the plaintiffs against Benjamín Hernández in the Puerto Rico Superior Court, San Juan Section, under Civil No. KAC–06–2079; Exhibit 4, copy of Benjamín Hernández' Answer to plaintiffs' Complaint against him in the local Superior Court, Affirmative Defense No. 3, where he identifies himself as Insurance Agent, and Exhibit 5, copy of page 1 (parag. 4), and page 8 of Carn's Second Answer to plaintiffs' Complaint against him in the local Superior Court, Affirmative Defense No. 21 and 23, where he identifies himself as an excess or surplus line broker.

9. Benjamín Hernández did not have any direct communications with TL Dallas in connection with the application or the issuance of the policy of insurance for the M/V BRAMELA during the time period relevant to this case. See Exhibit 1 at parag. 9.

10. Carn was the broker that communicated directly with TL Dallas on behalf of Carlos Cortés Molina to obtain insurance for the M/V BRAMELA. Carn has also sought quotes for marine insurance and obtained marine insurance through TL Dallas for other residents of Puerto Rico. See Exhibit 1 at parag. 10.

11. TL Dallas took Carn's insurance application or inquiry regarding the M/V BRAMELA, and quoted for coverage, and eventually bound cover in relation to the subject vessel, solely for Carlos Cortés through Policy No. 200/533/31901 for the period April 11, 2001–April 11, 2002. See Exhibit 1 at parag. 11 (and the Exhibits to the Verified Statement referred to in same). See also Exhibit 6, copy of Application Form in name of Carlos Cortés sent by Carn to TL Dallas, with hand written notation, in copy of Policy Endorsement.

12. TL Dallas was never asked to obtain or quote for insurance cover for co-plaintiff, Elsa I. Ortiz Collazo, and her name was not included in Cortés Molina's application form. Ortiz Collazo is not, nor ever has been, a party to the policy of insurance issued by Hamburger. See Exhibit 1, at parag. 11 (and the Exhibits to the Verified Statement referred to in same).

13. TL Dallas was not the insurance company that issued the policy of insurance that was in effect during the time period relevant to this case in relation to the M/V BRAMELA (insurance policy no. 200/533/31901). TL Dallas was the marine underwriting agency that represented Hamburger and was authorized to issue the subject policy upon behalf of Hamburger. See Exhibit 1, at parag. 4, 11 and 12.

14. At all relevant times TL Dallas disclosed the identity of its principal Hamburger. The subject policy, itself, was signed by TL Dallas, "[f]or and on behalf of participating underwriters". In addition, the subject policy specifically refers to "[s]ecurity as approved and agreed by you: 100% Hamburger Versicherungs AG ...". See Exhibit 1, at parag. 12. See also copy of the Cover Note (at the second page) included as the Exhibit B of the Verified Statement of Mr. Thomas.

15. TL Dallas does not vest, or delegate Carn, or any other insurance brokers in Puerto Rico, with the authority to bind

the marine insurance companies it represents, or with the authority to process, adjust, or otherwise, settle or pay insurance claims. Such authority remains with TL Dallas as claims agent and manager for the marine insurers it represents. See Exhibit 1, at parag. 13.

16. On July 29, 2001 the M/V BRAMELA was involved in an allision incident with an anchored boat in Dakiti Bay in Culebra, Puerto Rico, the S/V QUICK STEP, owned by Jo Ellen Blanchard. See Amended Complaint, Docket No. 5, at parag. 7; Exhibit 2, pages 23–24 of Cortés Molina's deposition; and Exhibit 1, at parag. 14.

17. Specifically, the weather conditions deteriorated and there were strong gusts of winds in Dakiti Bay. The plaintiffs were with a group of vessels anchored together. The other vessel owners started their vessels to go to a safer location. Mr. Cortés Molina, however, could not start the left (portside) engine of his vessel due to an electronic problem. Plaintiff's vessel then started dragging its anchor until it allided with the S/V QUICK STEP. See Exhibit 7, Plaintiff's incident report dated August 6, 2002 (more than a year after the incident). See also Exhibit 2 at pages 25–27, 29.

18. The problem with the left (portside) engine of the M/V BRAMELA existed prior to the incident in Dakiti Bay and Cortés Molina was aware of this problem. In fact, this electronic problem would sometimes prevent both engines from starting. See Exhibit 2, at pages 26–27.

19. Policy No. 200/533/31901 specifically provides under Section 10 "Your duties in the Event of a Loss", at paragraph no. 2, that the assured must "[a]s soon as possible give notification of the loss and its circumstances". See Exhibit 1 at parag. 15, and copy of Policy included as the Exhibit B of the Verified Statement of Mr. Thomas.

20. The plaintiffs did not provide notice to Hamburger or TL Dallas directly or through their insurance agents or brokers, Carn and/or Benjamín Hernández, during a time period contemporaneous the allision incident of July 29, 2001, as required under the policy of insurance issued by Hamburger. The plaintiff's failed to also report the incident to the Police, Coast Guard or other appropriate authority. See Exhibit 1 at parag. 16. See also Exhibit 2 at pages 30–31 and 36–38; and Exhibit 7.

21. As result of the allision incident, the owner of the S/V QUICK STEP filed suit before the United States District Court for the District of Puerto Rico almost a year after the incident, on July 8, 2002. The owner of the S/V QUICK STEP served process on the plaintiffs in that action on July 20, 2002. Thereafter, on August 12, 2002, more than one (1) year after the allision incident, the plaintiffs provided notice of the incident, for the first time, to TL Dallas through plaintiffs' brokers and/or insurance agents, Carn and Benjamín Hernández. In this regard, Carn was the one that communicated with TL Dallas. See Exhibit 1 at parag. 17. See docket for Civil Action No. 02–2033 filed before this Court (*Blanchard v. Carlos Cortés Molina*).

22. TL Dallas acknowledged plaintiffs' late notification of the incident, and the ensuing legal action, through a fax of August 13, 2002, where it specifically reserved underwriter's position due, among other things, to the failure to report the incident in timely fashion, as required under the policy issued in relation to the M/V BRAMELA. TL Dallas requested, as well, that the assured provide a translation to English of the statement of the incident, and a full explanation for the delay in reporting the matter. The fax from TL Dallas made it clear that it was not a

confirmation of coverage as it also informed that "[s]hould insurers provide coverage for this incident the deductibles will be the hull and liability deductibles" (emphasis added). See Exhibit 1, at parag. 18 (and the Exhibit C to the Verified Statement referred to in same).

23. Policy No. 200/533/31901 specifically provides under Section 10, "Your Duties In the Event of A Loss", paragraph 3, that the assured was required to "[c]omply with any reasonable request made of you, by us with regard to the loss". Despite the foregoing, and despite of the late notification of the incident, Cortés Molina directly or through the actions or omissions of his insurance agents or brokers, Carn and/or Benjamín Hernández, failed to provide the translation of the statement of incident; or the full explanation as to why the matter was reported so late; or to, otherwise, communicate back with TL Dallas in relation to the matter. See Exhibit 1, at parag. 19.

24. Then, in April of 2005, almost 4 years after the allision incident in Culebra, and almost three 3 years after the late notification in August of 2002, the plaintiffs insurance agent or broker, Carn, informed TL Dallas that the plaintiffs had failed to defend the claim and had allowed entry of a default judgment for the amount of $265,000.00. See Exhibit 1, at parag. 20. See also Docket in Civil Action No. 02–2033.

25. Almost immediately TL Dallas instructed an attorney to act on behalf of the plaintiffs to try to reverse the default judgment under a full and complete reservation of rights. See Exhibit 1, at parag. 21, (and the Exhibit D to the Verified Statement referred to in same.)

26. It is noted that the above referred letter issued by Attorney Hestres mistakenly refers to TL Dallas as an insurance company whereas, it is, in fact, a marine underwriting agency and claims manager, as specifically stated in this Verified Statement of TL Dallas, Mr. Alexander Mark Thomas. See Exhibit 1 at parag. 22.

27. Attorney Hestres was not able to reverse the default judgment entered against the plaintiffs, but managed to reduce the amount of the judgment from $265,000.00 to $135,000.00. See Exhibit 1, at parag. 23; and Amended Complaint, Docket No. 5, at parag. 30. See also Docket in the *Blanchard v. Carlos Cortés Molina litigation* (Civil Action No. 02–2033).

28. Policy No. 200/533/31901, specifically provides in Section 10, "Your Duties In the Event of A Loss", paragraph no. 7, that the assured can "[n]either assume obligation, nor admit liability without our written permission to do so". See Exhibit 1, at parag. 24 (and the Exhibit B to the Verified Statement referred to in same).

29. Based on plaintiffs late notification of the allision incident between the M/V BRAMELA and the S/V QUICK STEP, and the other breaches of the terms and conditions of Policy No. 200/533/31901, including their inactivity, which resulted in an admission of liability and entry of default judgment against the plaintiffs, the underwriter, through TL Dallas, have denied liability in response to plaintiffs claim in the case of caption, or that there is, otherwise, insurance cover under Policy No. 200/533/31901. See Exhibit 1, at parag. 25. See also the appearing defendants' Answer to Plaintiffs' Amended Compliant Docket No. 6 (Affirmative Defenses section, Parags. 1, 5–11, 14; and the Counter Claim section of the Answer at parag. 8). See also Exhibit D, letter under reservation of rights in relation to the *Blanchard v. Carlos Cortés Molina litigation* (Civil Action 02–2033).

30. Policy No. 200/533/31901, specifically provided in Section 9, "General Conditions & Warranties", Paragraph (c) "[t]his **insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in seaworthy condition"**. See Policy of Insurance included as the Exhibit B of the Verified Statement of Mr. Thomas at page 8. (*Emphasis ours* ).

31. Cortés Molina is a business person who owned and operated a car repair shop and car dealership from 1990 or 1992 until 2004. See Exhibit 2, pages 10–12.

32. Cortés Molina had a personal attorney that had represented him or provided services in connection with his business. This attorney had also represented him in a medical malpractice Claim. Cortés Molina notified and consulted with this attorney when he was served with the Summons and Complaint in the *Blanchard v. Carlos Cortés Molina litigation* (Civil Action No. 02–2033) See Exhibt. 2, at pages 33–34 and 42.

## II. APPLICABLE LAW

### A. SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). See *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Company v. Hayes,* 116 F.3d 957 at 959–60 (1st Cir.1997). In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). See *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *Cortes–Irizarry,* 111 F.3d at 187; *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate,** shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (*emphasis ours* ). The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly*

*v. United States*, 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." *See Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 451–52 (1st Cir.1992) (discussing unopposed motion for summary judgment). Finally, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril.** *See e.g. Corrada Betances v. Sea–Land Service, Inc.*, 248 F.3d 40, 43 (1st Cir.2001); *Hebert v. Wicklund*, 744 F.2d 218, 223 (1st Cir.1984). However, notwithstanding that there is no opposition to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction even for failure to file an opposition. *See De La Vega v. San Juan Star*, 377 F.3d 111 (1st Cir.2004).

## B. APPLICABLE MARITIME LAW

■ Marine insurance contracts are within the admiralty jurisdiction. *De Lovio v. Boit*, 7 F.Cas. 418, (C.C.D.Mass. 1815). United States Courts applying admiralty jurisdiction contract interpretations have generally held that hull and protection and indemnity marine insurance contracts are within the clear scope of admiralty jurisdiction. See *American Eastern Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123 (5th Cir.1979)(hull); *Morewitz v. West of England Ship Owners Mut. Protection and Indem.*, 62 F.3d 1356 (11th Cir.1995)(P & I). Further, general liability policies have been held as covered under admiralty jurisdiction depending on

the circumstances. *See Granite State Minerals v. American Ins.*, 435 F.Supp. 159, 164 (D.Mass.1977).

■ It is well known that the law of marine insurance has not been codified in the United States. As a general rule, the principles applied in cases of marine insurance is the federal maritime law. However, in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955) the Supreme Court held that a federal court should apply state law to interpret a marine insurance policy unless a specific federal rule overrides that issue. See, e.g., *Underwriters at Lloyd's v. LaBarca*, 106 F.Supp.2d 205, 209 (D.P.R.2000) affirmed 260 F.3d 3 (1st Cir. 2001) (federal maritime law governs the interpretation of the **warranty of seaworthiness** in a marine insurance policy) (citations omitted)(emphasis ours) and *Underwriters at Lloyd's v. Johnston*, 124 F.Supp.2d 763, 769 (D.P.R.1999) (citations omitted)(federal maritime law doctrine of "uberimmae fidei" governs the relationship between the underwriter and assured in a marine insurance policy). Even though state law may supplement the general maritime law if it is silent, or when a local matter is at issue, state law is inapplicable should it materially differ from the general maritime law or if the state law "would defeat the reasonably settled expectations of maritime actors". See *Windsor Mount Joy Mutual Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir.1995).

In *Windsor Mount Joy Mutual Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995), the Court addressed a choice of law issue regarding general maritime and state law, and explicitly explained the interplay between state law and federal maritime law:

The propriety of maritime jurisdiction over a … marine insurance policy is

unquestionable (citations omitted) [but w]hen . . . no established maritime rule governs the issues of a marine insurance dispute, the Wilburn Boat inquiry becomes applicable. In the absence of a settled federal maritime rule, Wilburn Boat has generally been interpreted "in deference to state hegemony over insurance, to discourage the fashioning of new federal law and to favor the application of state law (citation omitted) . . . [s]tate law may supplement maritime law when maritime law is silent or a local matter is at issue, but state law may not be applied where it is materially different from maritime law, or where it would defeat the reasonably settled expectations of maritime actors". (citations omitted)(emphasis added).

It follows, therefore, that state law may be applied in marine insurance under limited or specific circumstances where it is not materially different from maritime law "or where it would defeat the reasonably settled expectations of maritime actors." See *Id.*

### III. ANALYSIS

Regarding Defendants' allegation that TL Dallas is not an insurance company or marine underwriter, the Court finds the following:

■ It is uncontested that TL Dallas is not an insurance company or underwriter, that it was not the insurance company that issued the policy of insurance that was in effect during the time period relevant to this case in relation to the M/V BRAMELA (Insurance Policy No. 200/533/31901), that it was the marine underwriting agency that represented the underwriter, co-defendant Hamburger, and was authorized to issue the subject policy on behalf of Hamburger. *See* Docket No. 22, ¶¶ 3–6, 13. It is further uncontested that at all relevant times TL Dallas disclosed the identity of its principal Hamburger, that the subject policy, itself, was signed by TL Dallas, "[f]or and on behalf of participating underwriters", and that the subject policy specifically refers to "[s]ecurity as approved and agreed by you: 100% Hamburger Versicherungs AG . . .". *See Id.,* ¶ 14. Consequently, since the contractual relation is between the insured or policy holder, who agrees to pay premium, and the insurer or underwriter who agrees to indemnify the insured if certain losses or damages occur to defined interests, who in this case is Hamburger, then the Complaint against co-defendant, TL Dallas is hereby **DISMISSED.** *Williams v. New England Ins. Co.,* 29 F.Cas. 1383 (C.C.D.Mass.1869).[1]

Regarding Defendants' allegation that Elsa I. Collazo nor the Conjugal Partnership between her and Carlos Cortes (hereinafter "Conjugal Partnership") are parties to the marine insurance policy, the Court finds the following:

It is uncontested that TL Dallas was never requested to obtain or quote for insurance coverage for co-plaintiffs, Elsa I. Ortiz Collazo or the Conjugal Partnership, and neither were included in Carlos Cortés Molina's application form, nor did the insurance policy include them as assured. *See* Docket No. 22, ¶ 12; *see also* Docket No. 22, Exhibit 1–A and Exhibit 1–B. Consequently, Elsa I. Ortiz Collazo and the Conjugal Partnership are not, nor ever have been, insured parties to the policy of

---

1. This is not the case of an error, omission or misrepresentation in the handling or entering into of the maritime insurance policy, by TL Dallas on behalf of Hamburger. The instant case is a claim for damages of the vessel and/or damages caused by M/V Bramela to a third party, hence not related to any error made by an underwriting agent like TL Dallas.

insurance issued by Hamburger. *See Id.* Furthermore, the Insurance Agreement specifically states that a "covered person" is "you, or any person detailed on your application form which has been submitted and approved by us." *See* Docket No. 22, Exhibit 1–B. Therefore, since the insurance application that was submitted and approved by Hamburger, only included Carlos Cortes as the assured, he is the only party to the policy of insurance issued by Hamburger. *See Fruehauf Corp. v. Royal Exchange Assur. of America, Inc.,* 704 F.2d 1168, 1171 (9th Cir.1983)("A policy ... is a personal contract between the insured, ... and the underwriter ...".) Consequently, the actions brought forth by Elsa I. Ortiz Collazo and the Conjugal Partnership as to all the Defendants, are hereby **DISMISSED.**

Regarding Defendants allegation that co-plaintiff Carlos Cortes Molina did not comply with his duties as assured, the Court has finds the following:

It is uncontested that the insurance policy (*see* Docket No. 22, Exhibit 1–B) specifically provides under Section 10, at ¶ 2, that the assured's duty in the event of a loss is to "[a]s soon as possible give notification of the loss and its circumstances". *See* Id., ¶ 19. It is further uncontested that Plaintiffs did not provide notice to Hamburger or TL Dallas directly or through their insurance agents or brokers, Carn and/or Benjamín Hernández, "as soon as possible", nor at least during a time period contemporaneous to the allision incident of July 29, 2001, as required under the policy of insurance issued by Hamburger. *See* Docket No. 22, ¶ 20. It was not until August 12, 2002, more than one (1) year after the allision incident, that Plaintiffs provided notice of the incident, for the first time, to TL Dallas through plaintiffs' brokers and/or insurance agents,

Carn and Benjamín Hernández. *See Id.,* ¶ 21.

■ Pursuant to the insurance policy, the Choice of law provision, states that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but, where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

*See* Docket No. 22, Exhibit 1–B. Consequently, there being "no federal statute or admiralty rule of the Supreme Court governing the interpretation of Notice of Loss provisions; they are governed by state, in this case, New York, rather than federal law." *See Big Lift Shipping Co., (N.A.) Inc., v. Bellefonte Ins. Co.,* 594 F.Supp. 701, 704 (S.D.N.Y.1984); *see also* Docket No. 22, Exhibit 1–B, section 12 (Choice of Law).

It is the law of New York that compliance with a Notice of Loss provision in a contract of marine liability insurance is a condition precedent to the insurer's liability and that the insurer need not show that it was prejudiced by the assured's failure to do so. The giving of the required notice affords the insurer an opportunity to protect itself, and is a condition precedent to liability. *Security Mutual Insurance Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (Ct.App.1972). New York courts consistently have held that the insurer need not show that it was prejudiced by a late notice in order to maintain the defense of noncompliance with the condition. Id. 340 N.Y.S.2d at p. 905, 293 N.E.2d 76.

*See Id.*

■ As aforementioned, the insurance policy (*see* Docket No. 22, Exhibit 1–B)

specifically provides under Section 10, at ¶ 2, that the assured's duty in the event of a loss is to "[a]s **soon as possible** give notification of the loss and its circumstances". (*Emphasis ours*). In the instant case, Plaintiffs notified the Defendants of the allision on August 12, 2002, more than one (1) year after the allision incident, without any reasonable explanation or mitigating circumstance.

It is unquestioned that a failure to satisfy the requirements of this clause by timely written notice vitiates the contract as to both the insured and the plaintiff recovering a judgment against him (*Bazar v. Great Amer. Ind. Co.*, 306 N.Y. 481, 119 N.E.2d 346 [(1954)]; see *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 275, 160 N.E. 367 [(1928)]) and that the term "as soon as practicable", like various similar expressions in other liability policies, requires that written notice be given within a reasonable time under all the circumstances (*Vanderbilt v. Indemnity Ins. Co. of North America*, 265 App.Div. 495, 496, 39 N.Y.S.2d 808 [(1943)]; see 8 Appleman on Insurance Law and Practice, § 4734, p. 105). It is also well settled that the reasonableness of a delay, where mitigating circumstances such as absence from the State or lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually for the jury (*Rushing v. Commercial Cas. Ins. Co.*, 251 N.Y. 302, 304, 167 N.E. 450 [(1929)]; *Melcher v. Ocean Acc. & Guar. Corp.*, 226 N.Y. 51, 123 N.E. 81 [(1919)]; see, also, *Gluck v. London & Lancashire Ind. Co. of America*, 2 A.D.2d 751, 153 N.Y.S.2d 518 [(1956)], affd. without opinion 2 N.Y.2d 953, 162 N.Y.S.2d 357, 142 N.E.2d 423 [(1957)]). **On the other hand, absent an excuse or mitigating circumstances, courts have assumed the function of determining fulfillment of the condition.** Thus in the Rushing case (supra, p. 304) Cardozo, Ch. J., stated that as a matter of law, **"In the absence of explanation or excuse, a notice of an accident withheld for twenty-two days is not the immediate notice called for by the policy".** In an earlier case this court, having found no mitigating circumstances, held that a delay of 10 days was unreasonable as a matter of law (*Haas Tobacco Co. v. American Fidelity Co.*, 226 N.Y. 343, 123 N.E. 755 [(1919)]; see, also, *Quinlan v. Providence Washington Ins. Co.*, 133 N.Y. 356 [31 N.E. 31 (1892)] [33 days]; *Reina v. United States Cas. Co.*, 228 App.Div. 108, 239 N.Y.S. 196 [(1930)], affd. 256 N.Y. 537 [177 N.E. 130 (1931)] [26 days]; *Vanderbilt v. Indemnity Ins. Co. of North America*, supra [28 days] ).

*See Deso v. London & Lancashire Indem., Co., of America*, 3 N.Y.2d 127, 129–130, 164 N.Y.S.2d 689, 143 N.E.2d 889 (N.Y.1957)(*emphasis ours*). Consequently, after reviewing the aforementioned New York cases, it is evident that Plaintiffs' notification of the allision incident to the Defendants, more than one (1) year after the allision, in absence of a reasonable explanation or mitigating circumstance, fails to comply with the immediate notice required by the insurance policy. Therefore, since said failure vitiated the contract as to the insured, Carlos Cortes Molina, recovering any judgment against him, the Court finds that Plaintiffs Complaint should be **DISMISSED** in its entirety, for failing to comply with the aforementioned notification requirement under the policy of insurance issued by Hamburger. *See Id.*[2]

---

**2.** The Court finds that although TL Dallas acknowledged Plaintiffs' late notification via fax, *see e.g.* Docket No. 22, Exhibit 1–C, said acknowledgment in no way shows that TL

Although Plaintiffs' failure to comply with the notification requirement is sufficient to DISMISS Plaintiffs Complaint in its entirety, the Court has found that it is further uncontested that Plaintiffs failed to comply with other duties and requirements under the insurance policy which warrant the **DISMISSAL** of Plaintiffs Complaint.

It is uncontested that Plaintiffs failed to report the incident to the Police, Coast Guard or other appropriate authority, and failed to immediately take all possible steps to minimize the loss and/or damages caused by the allision by failing to notify the incident in a timely manner, as required by the insurance policy. *See Docket No. 22,* ¶¶ 19–21, ¶¶ 24–29. Furthermore, Plaintiffs failed to comply with the reasonable requests made by the insurer with regard to the loss, as required by the insurance policy. *See Id,* at ¶¶ 22–23.

■ In addition to all of the aforementioned uncontested facts evidencing Plaintiffs non-compliance with numerous duties and requirements under the insurance policy, the Court has found the following. It is further uncontested that pursuant to the insurance policy issued by Hamburger, in the General Conditions & Warranties section it is stated that the **"insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition"**. *See Docket No. 22,* ¶¶ 18 and 30(emphasis ours). Consequently, since it is uncontested that Cortés Molina was aware of the problem with the left (portside) engine of the M/V BRAMELA prior to the incident in Dakiti Bay, which would sometimes prevent both engines from starting, Plaintiffs failed to comply with the General Conditions & Warranties section of the insurance policy. *See Id.* (*See also* Docket No. 22, ¶¶ 17–18 wherein the vessel M/V Bramela dragged because one of the engines could not start, as was expected due to prior history of failing to start, and consequently the anchor dragged until it collided with S/V Quick Step.); *Continental Ins., Co., v. Lone Eagle Shipping Ltd.,* 952 F.Supp. 1046, 1070

Dallas was waiving any of its defenses, nor that it was agreeing to defend Plaintiffs in any litigation. *See* Docket No. 22, ¶ 22. In other words, if Plaintiff believed or assumed from Defendants' fax that he was being represented by the underwriter, but never received any *further notification, information, etc., it was* his "duty to take the legal steps . . . necessary to protect his . . . own interests." *See Cotto v. U.S.,* 993 F.2d 274, 278 (1st Cir.1993)(*citing Ackermann v. U.S.,* 340 U.S. 193, 197, 71 S.Ct. 209, 95 L.Ed. 207 (1950)); *see also Claremont Flock Corp. v. Alm,* 281 F.3d 297, 300 (1st Cir.2002) ("Accordingly, the district court determined that the default judgment was 'attributable to [Defendant's] own negligence and not to extraordinary circumstances beyond the party's control.' The district court did not abuse its discretion in drawing this inference of fault from the evidence in the record.")(*Emphasis ours*). On the other hand, TL Dallas' fax specifically states that they "must fully reserve insurers position herein as [they had] no records of [the] inci-

dent having been disclosed [them] any earlier." *See* Docket No. 22, Exhibit 1–C (*emphasis ours*). Furthermore, the same, required Plaintiffs to give a full explanation for the notification delay, which they failed to do in violation of the insurance policy. *See* Docket No. 22, ¶¶ 22–23. In addition it clearly stated that "[s]hould the insurers provide coverage for [the] incident the deductibles will be the hull and liability deductibles." *See* Docket No. 22, Exhibit 1–C,(*emphasis ours*). Since, through said statement, it is evident that the underwriter was still questioning whether coverage was going to be provided, it is highly improbable that the underwriter was nonetheless going to represent them in the ongoing litigation against them, *see e.g. Blanchard v. Carlos Cortes Molina* (Civil No. 02–2033).

Furthermore, it is uncontested that plaintiff, Carlos Cortes Molina had a personal attorney, whom he notified and consulted after being served with the summons and complaint in the *Blanchard v. Carlos Cortes Molina* (Civil No. 02–2033), case. *See* Docket No. 22, ¶ 32.

(S.D.N.Y.1997)("Under this warranty, "the insured promises not to knowingly send a vessel to sea in an unseaworthy condition." ")(quoting *Employers Ins. of Wausau v. Occidental Petroleum, Corp.,* 978 F.2d 1422, 1432 (5th Cir.1992)); *see also Certain Underwriters at Lloyd's London Subscribing to Policy v. Arthur W. Johnston, et als.,* 124 F.Supp.2d 763, 772 (D.P.R.1999)

> (Plaintiffs' policy contains additional language which provides that it will not afford coverage where the insured fails to exercise due diligence to maintain the vessel in seaworthy condition. This provision clearly purports to reiterate the so-called "American Rule" which has been recognized as establishing a "negative implied warranty." Under this warranty, "the insured promises not to knowingly send a vessel to sea in unseaworthy condition," *Employers Ins. of Wausau,* supra, 978 F.2d 1422, 1993 A.M.C. at 1474. To find a breach of this provision, the court must determine that the vessel owner had knowledge of the unseaworthy condition.)

(*Quoting Saskatchewan Government Ins., Office v. Spot Pack, Inc.,* 242 F.2d 385, 388 (5th Cir.1957)).

Furthermore, the General Conditions & Warranties section also states that

> [n]o suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity **unless the Assured shall have fully complied with all the requirements of this Insuring Agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose,** provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be suitable unless commenced within the shortest limitations permitted under the laws of such state. *See* Docket No. 22, Exhibit 1–B (*emphasis ours* ).

Under New York law, parties to a contract may designate a reasonable period of limitations within which a claim arising out of the contract is to be commenced, even if that period is shorter than the statutory period. The insurer has the initial burden of establishing that the limitations period in the policy expired prior to the commencement of the action.

. . .

Although New York courts have held that a one-year time limitation to bring suit for breach of an insurance contract is reasonable and enforceable, that does not necessarily end the inquiry. As with any other provisions in the contract, it is for the Court to decide whether the language of the one-year limitations period in the Policy is ambiguous, and if so, how to interpret that provision.

. . .

Once the insurer has met its burden of establishing that the insured did not bring suit within the limitations period, the insured has the burden to prove, by a preponderance of the evidence, that the case "falls within an exception to the limitations period," such as equitable estoppel or waiver. In order to establish waiver, plaintiff must prove facts "from which the defendant's intent to relinquish the protection of the contractual limitations period can be reasonably inferred." In order to establish estoppel, plaintiff must prove that it was "misled or lulled by the defendant into failing to bring its claim in a timely manner." *See North American Foreign Trading Corp., v. Mitsui Sumitomo Ins., USA, Inc.,* 499 F.Supp.2d 361, 374–376 (S.D.N.Y. 2007).

First, the Court finds that it is more than evident that Plaintiffs have failed to fully comply with all the requirements of the insurance policy. Second, the Court finds that the instant case which was filed on April 6, 2006, was filed almost (five) 5 years after "the date of the happening or the occurrence out of which the claim arose", which was July 29, 2001. *See* Docket No. 22, Exhibit 1–B. Thereby, failing to comply with the one (1) year limitations period required by the insurance policy. *See Id.* Although Defendants have met their burden of establishing that the insured did not bring suit within the limitations period, in the instant case, Plaintiffs have failed to meet their burden by failing to file an opposition to Defendants motion for summary judgment. Furthermore, the Court finds that judgment of dismissal is also warranted as a matter of law as analyzed above. For said reasons, the Court finds that Plaintiffs Complaint should be **DISMISSED.**

## IV. CONCLUSION

Consequently, there being no issue of material facts and judgment being warranted as a matter of law, see e.g. *Kelly,* 924 F.2d at 355, the Court hereby **GRANTS** Defendants', TL Dallas (Special Risks) Ltd., and Hamburger Versicherungs AG, *Motion for Summary Judgment* (Docket Nos. 20, 21, 22). Therefore, the instant case's Amended Complaint (Docket No. 5), is hereby **DISMISSED** in its entirety **with PREJUDICE.** Judgment shall be entered accordingly.

As to Defendants' request for attorneys fees, counsel shall provide the Court a verified memorandum stating a detailed schedule of the attorney's fees and costs incurred in the prosecution of the instant case, in compliance with *Coutin v. Young & Rubicam P.R., Inc.,* 124 F.3d 331, 337 n. 3 (1st Cir.1997)[3], in ten (10) days, that is on or before **April 11, 2008.**

*Coutin* stands for the proposition that attorney fees shall be awarded according to the conventional approach provided by the lodestar methodology which attempts to provide a foundation based in the "numbers of hours reasonably expended on the litigation multiplied by a reasonable hourly rate as the starting point in constructing a fee award". *Coutin,* 124 F.3d at 337(citations omitted). The party seeking the attorney's fees should submit evidence supporting the hours worked and the rates claimed. See *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). To calculate the rate to which attorneys are entitled, the Court must take into consideration **the prevailing rate in the community**[4] considering the experience, qualifications and competence of the attorneys involved. See *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d 288, 295 (1st Cir.2001); see also *United States v. Metro-*

**3.** The First Circuit has "embraced" the criteria set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), to wit:

1) the time and labor required; 2)the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney(s) due to acceptance of the case; 5) the customary fee; 6)the nature of the fee (fixed or contingent); 7) the time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the ex-

perience, reputation, and the ability of the attorney(s); 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) the size of awards in similar cases. *See Coutin,* 124 F.3d at 337, n. 3.

**4.** The Court prefers that the "prevailing rate in the community" be established by an expert on the field (a fellow practicing attorney in the community in Federal Court in Puerto Rico) as to the customary fee to avoid potential arguments as to self serving statements.

*politan Dist. Com'n,* 847 F.2d 12, 19 (1st Cir.1988); *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992). In setting the rates, the Court should turn "a realistic eye on the proffered pricing, endeavoring to fashion rates 'adequate to attract competent counsel but which do not produce windfalls to attorneys.'" See *Metropolitan Dist. Com'n,* 847 F.2d at 19 (1st Cir.1988)(quoting *Hensley,* 461 U.S. at 430 n. 4, 103 S.Ct. 1933.) Orthodox deviations from the lodestar are allowed but only in "highly unusual" situations. See *Metropolitan Dist. Comm'n,* 847 F.2d at 15–16. After initial calculations, the Court may retain jurisdiction to adjust its lodestar but, "it must do so in accordance with accepted principles". See *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. However, "where a party's litigation strategy increases the cost of litigation, it is reasonable to award the total number of hours incurred". See *Lipsett,* 975 F.2d at 941. Finally, the award of attorneys fees is reviewable only for errors of law or abuse of discretion. *Lipsett,* 975 F.2d at 937(citing *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980)).

**IT IS SO ORDERED.**